THE HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NORTHWEST COALITION FOR ALTERNATIVES TO PESTICIDES, PACIFIC COAST FEDERATION OF FISHERMEN'S ASSOCIATIONS, INSTITUTE FOR FISHERIES RESOURCES, and DEFENDERS OF WILDLIFE,<br><br>    Plaintiffs,<br><br>vs.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,<br><br>    Defendant,<br><br>  and<br><br>DOW AGROSCIENCES LLC, CROPLIFE AMERICA, RISE, OREGONIANS FOR FOOD AND SHELTER, WASHINGTON FRIENDS OF FARMS AND FORESTS, and WILLAPA/GRAY'S HARBOR OYSTER GROWERS COUNSEL,<br><br>    Intervenor-Defendants. | No. C10-1919Z<br><br>ORDER |

ORDER - 1

THIS MATTER comes before the Court on Federal Defendant's ("EPA") Motion for Extension of Stay, docket no. 66, and Dow Agrosciences and CropLife America ("Intervenor Defendants") Joint Motion to Stay, docket no. 67. Having reviewed all papers filed in support of, and in opposition to, the pending motions, the Court enters the following Order.

**Background**

On July 2, 2002, this Court found the Environmental Protection Agency ("EPA") in violation of Section 7 of the Endangered Species Act ("ESA") for failure to consult with National Marine Fisheries Service ("NMFS") to ensure that 54 registered pesticides would not jeopardize ESA listed salmonid species. Washington Toxics Coalition v. EPA, No. C10-132C, slip op. at 20 (W.D. Wash. July 2, 2002), aff'd, 413 F.3d 1024 (9th Cir. 2005) (hereinafter "Washington Toxics"). In a separate Order, this Court granted injunctive relief prohibiting certain uses of those 54 pesticides to protect salmonids while the consultation process with NMFS proceeded. Washington Toxics, No. C01-132C, Order at 4-10 (W.D. Wash. Jan. 22, 2004) One of the interim protective measures ordered by the Court was the implementation of buffer zones of 20 yards for ground application and 100 yards for aerial application of the listed pesticides, with certain exceptions. Id. at 4-5.

In 2007, after being sued by the Northwest Coalition for Alternatives to Pesticides ("NCAP") and others for failure to complete the required consultations, NMFS entered into a consent decree agreeing to issue biological opinions ("BiOp") on 37 of the

pesticides that EPA determined "may affect" listed salmonids. On November 18, 2008, NMFS issued the first BiOp ("OP BiOp"), concluding that the continued use of the organophosphate pesticides diazinon, malathion, and chlorpyrifos jeopardized the existence of 27 species of salmon and steelhead and would destroy or adversely modify critical habitat for 25 of those species. OP BiOp at 391. On April 20, 2009, NMFS issued the second biological opinion ("Carbamate BiOp") concluding that EPA's registration of pesticide products containing carbaryl and carbofuran jeopardize 22 listed Pacific salmonids and would likely destroy or adversely modify the habitat of at least 20 listed Pacific salmonids. Carbamate BiOp at 488. NMFS also found that pesticide products containing methomyl jeopardize 18 listed Pacific salmonids and likely destroy or adversely modify the habitat of at least 16 Pacific salmonids. Id. The interim protective measures ordered in 2004, including the buffer restrictions, terminated with respect to the pesticides at issue in the OP and Carbamate BiOps when NMFS issued those biological opinions. Washington Toxics, No. C01-132C at 12 (W.D. Wash. Jan. 22, 2004).

In April 2009, the pesticide registrants filed suit against NMFS in the U.S. District Court for the District of Maryland alleging that the OP BiOp was flawed.[1] Dow AgroSciences LLC v. Nat'l Marine Fisheries Service, 638 F. Supp. 2d 508 (D. Md.

---

[1] Defendants' assert that the outcome of the Maryland case will be dispositive of issues raised here with respect to both the OP BiOp and the Carbamate BiOP, even though the Maryland case only challenged the OP BiOp, because EPA raised the same concerns about NMFS methodologies in their comments to the draft versions of both BiOPs. See Reply of Inervenor-Defendants in Support of Motion to Stay at 1 (docket no. 72); Dow Argosciences Motion to Stay at 5 (docket no. 44).

2009). The Maryland District Court determined that Federal Insecticide, Fungicide, and Rodenticide Act's (FIFRA) exclusive jurisdiction provision required plaintiffs to bring their challenge in the Court of Appeals. Id. at 513. The Fourth Circuit reversed and remanded to the Maryland District Court for further proceedings. Dow AgroSciences LLC v. National Marine Fisheries Service, 637 F.3d 259 (4th Cir. 2011).

On November 29, 2010, alleging that EPA had not taken any steps to implement the Reasonable and Prudent Alternatives ("RPAs") and the Reasonable and Prudent Measures ("RPMs") articulated in the BiOps, nor taken any alternative protective measures, Plaintiffs brought this suit seeking to enjoin EPA's authorization of the uses of diazinon, malathion, chlorpyrifos, carbaryl, carbofuran, and methomyl that do not comply with the RPAs and RPMs. Complaint for Declaratory and Injunctive Relief at ¶¶ 10, 11 (docket no. 1). On May 25, 2011, the Intervenor Defendants moved to stay this case pending a decision in the District of Maryland case. Motion to Stay at 1 (docket no. 44). EPA separately moved to stay this case for six months. Motion to Stay at 1 (docket no. 48). The Court stayed the case until December 30, 2011, and ordered the parties to file a Joint Status Report (JSR) by that date or within 30 days of a decision in the Maryland case. Order at 1 (docket no. 58).

On October 31, 2011, the District of Maryland issued its opinion concluding that the OP BiOp was not flawed. Dow AgroSciences, 821 F. Supp. 2d at 810-11. The Court denied the plaintiffs' motion for summary judgment and granted NMFS and intervenor defendants' cross-motions for summary judgment. Id.; Order, No. 09-cv-824 (S.D.

Maryland October 31, 2011). The plaintiffs have appealed to the Fourth Circuit. See Dow AgroSciences LLC v. Nat'l Marine Fisheries Service, No. 11-2337 (4th Cir.).

The parties submitted a JSR on December 6, 2011, stating that they were unable to reach a consensus on how this case should proceed following the decision in the District of Maryland. JSR (docket no. 61). The EPA and the Intervenor Defendants indicated that they would seek an additional stay. EPA stated that it would seek to extend the stay because the National Academy of Sciences ("NAS") is currently conducting a review of the scientific methodologies underlying pesticide risk assessment, which will inform its implementation of the BiOps. EPA indicated that it would use an additional stay to "explore and discuss with the Parties and affected government entities, businesses and the public, possible approaches for developing alternative, interim, risk reduction measures that are adequately protective of the listed salmonid." JSR at 2. The Intervenor Defendants indicated that they would seek to extend the stay pending the outcome of their appeal in the Fourth Circuit. JSR at 3. Plaintiffs indicated their opposition to an additional stay. JSR at 2-3. Following receipt of the JSR, the Court extended the stay to March 30, 2012, to allow the parties to "attempt to resolve as many issues as possible." Minute Order (docket no. 62).

EPA has now moved to extend the stay for an additional six months, through September 28, 2012. Federal Defendant's Motion for Extension of Stay at 1 (docket no. 66). Defendant Intervenors have moved to stay pending a decision by the Fourth Circuit in their appeal of the District of Maryland case, with no date restriction. Dow

Agrosciences and CropLife America Joint Motion to Stay at 1 (docket no. 67). Plaintiffs oppose any further stay and, in the alternative, move the Court to issue a preliminary injunction imposing interim protective measures should another stay be granted. Plaintiffs' Opposition to Defendant's and Defendant-Intervenors' Motions for Extension of Stay at 2, 14 (docket no. 70).

**Nature of the Case**

Plaintiffs have commenced this action to determine whether EPA must, as a matter of law, implement the OP and Carbamate BiOPs. NCAP argues that extensive evidence, including the NMFS biological opinions, demonstrates that the current uses of these pesticides both take individual fish and jeopardize the continued existence of ESA listed salmonid populations. NCAP seeks to "[e]njoin, vacate, and set aside EPA's authorization of any use of diazinon, malathion, chlorpyrifos, carbaryl, carbofuran, and methomyl that does not comply with the RPAs and RPMS." Amended Complaint for Declaratory and Injunctive Relief at ¶ 19 (docket no. 40). The Court must decide whether a continued stay of these proceedings is warranted.

**Discussion**

    A. **Standard for Stay of Proceedings**

Federal district courts have the power to stay ongoing proceedings "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. N. Am. Co., 299 U.S. 248, 254 (1936). Where there is an independent proceeding related to

a matter before the trial court, the Court may "find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which may bear upon the case." Mediterranean Enters., Inc. v. Ssanyong Corp., 708 F.2d 1458, 1465 (9th Cir. 1983) (quoting Leyva v. Certified Grocers of Cal., Ltd., 593 F.2d 857, 863 (9th Cir. 1979)). "This rule applies whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court." Leyva v. Certified Grocers of California, LTD., 593 F.2d 857, 863 (9th Cir. 1979).

In determining whether a stay is appropriate, the Court is to consider "the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." Landis, 299 U.S. at 254. A district court's decision to grant or deny a stay is a matter of discretion. See Dependable Highway Exp., Inc. v. Navigators Ins. Co., 498 F.3d 1059, 1066 (9th Cir. 2007). The party seeking a discretionary stay bears the burden of proving that a stay is warranted. See Clinton v. Jones, 520 U.S. 681, 708 (1997).

**B. EPA's Motion for Extension of Stay**

EPA requests that the Court extend the current stay an additional six months to September 28, 2012, so that it may continue to engage the parties and other interested

stakeholders in a voluntary process intended to develop acceptable interim measures to address potential risks from pesticides to listed salmonid. Federal Defendant's Motion for Extension of Stay at 1. EPA argues (1) a continued stay would conserve the parties' and the court's resources by narrowing or eliminating issues, (2) plaintiffs will not be harmed by a continued stay of this case because the case has already been stayed twice and EPA's proposed plan for developing interim protections will likely result in protective measures being put in place faster than could be accomplished through litigation, and (3) EPA will suffer hardship if proceedings continue because it could be forced to implement the BiOps prior to the issuance of the NAS report and be required to expend resources on litigation rather than on developing interim protective measures. These arguments are not persuasive.

With respect to the first argument, litigation concerning the use of these pesticides has been ongoing for a decade[2] and this Court already granted EPA one stay to pursue settlement negotiations. By EPA's own admission, it did not contact any stakeholders until two months after the court issued the last stay and it did not contact the Plaintiffs until approximately two weeks before the stay expired. Federal Defendant's Motion for

---

[2] NCAP first sued EPA over the effects of these pesticides in 2002. Washington Toxics, 413 F.3d 1024. There, this Court found EPA in violation of Section 7 of the ESA and ordered EPA to initiate consultation with NMFS on any pesticide it determined "may affect" listed salmonid. Id. at 1029. The BiOps at issue in this case are the first of 37 biological opinions that NMFS is required to issue under a 2008 consent decree with NCAP resulting from Washington Toxics and additional litigation. NCAP v. NMFS, No. C07-1791 (W.D. Wash. July 31, 2008).

Extension of Stay at 6; Keigwin Decl. at ¶¶ 7-8 (docket no. 66-1). This does not demonstrate a strong effort by EPA to reach a settlement with Plaintiffs.

In addition, even if EPA diligently continues to pursue an agreed settlement, it offers no assurance that it will be able to develop interim protective measures that would be acceptable to the Plaintiffs. Rather, it appears that EPA and Plaintiffs fundamentally disagree as to what protections are reasonable and necessary.

Moreover, it is not difficult to understand Plaintiffs' skepticism about the potential for developing agreed interim protective measures given the ambiguity used to describe the proposed process in EPA's briefs.[3] EPA has not demonstrated that granting a third stay for EPA to continue pursuing the development of interim protective measures would result in the conservation of judicial resources.

Second, EPA argues that extending the stay will not prejudice the Plaintiffs' interests. EPA argues that its proposed process for developing agreed risk reduction measures will lead to the same type of protective measures that Plaintiffs seek in this lawsuit. This argument is disingenuous. As noted, EPA and Plaintiffs disagree as to what remedies the Plaintiffs are seeking and what remedies are available under the law. EPA vigorously argues that Plaintiffs only available remedy is a lengthy cancellation proceeding under FIFRA. Federal Defendant's Motion for Extension of the Stay at 10, 12-13; Federal Defendant's Reply in Support of Motion to Extend the Stay at 2-3 (docket

---

[3] See, e.g., "EPA has shown, however, participants in the stakeholder meetings have ***largely voiced support for further exploring the possibility*** of implementing effective interim measures." Federal Defendant's Reply in Support of Motion to Extend the Stay at 4 (docket no. 71).

ORDER - 9

no. 71). Plaintiffs, on the other hand, argue that they are not limited to cancellation proceedings under FIFRA but may also seek an injunction or agreed settlement similar to the remedy imposed in Washington Toxics. Plaintiffs' Opposition to Defendant's and Defendant-Intervenors' Motions for Extension of Stay at 6-8 (docket no. 70).[4] Given this disagreement, it is unlikely that EPA will volunteer to implement protective measures consistent with what the Plaintiffs believe they can achieve in this lawsuit.

Finally, EPA argues that failure to grant the proposed stay will prejudice it for two reasons. First, EPA claims that proceeding with this litigation may force it to reconcile a future order from this Court concerning implementation of the BiOps with a subsequent NAS report evaluating the appropriate approaches and methodologies for conducting endangered species assessment in the context of pesticide analysis. While that may be the case, this is not a persuasive reason to support another stay. As Plaintiffs point out, the EPA will be required to review the impact of the NAS report on any protective measures that it puts in place regardless of whether they are implemented as the result of a collaborative process or a court order. Plaintiffs' Opposition to Defendant's and Defendant-Intervenors' Motions for Extension of Stay at 10 (docket no. 70). The BiOps at issue in this case were issued in 2008 and 2009 respectively. While the NAS report will speak to the methodology of the science underlying the creation of

---

[4] EPA regulates pesticides under FIFRA. 7 USC §§136, et. seq. FIFRA sets forth a comprehensive regulatory scheme for controlling the sale, use, and labeling of pesticides and establishes the procedures through which EPA registers, labels, and cancels the registration of pesticides. See 7 USC § 136a-d; see also Washington Toxics, 413 F.3d at 1030.

ORDER - 10

those reports, it will not affect their validity. The District of Maryland has already found the BiOps to be valid and enforceable. Dow Agrosciences, 821 F. Supp. 2d at 810.

Finally, EPA argues that the Court should extend the stay because it would be a hardship to litigate this case in lieu of continuing the voluntary stakeholder outreach process that it has already begun. But, as EPA acknowledges, "being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity.'" Lockyer v. Mirant Corp., 398 F.3d 1098, 1112 (2005). Further, EPA has not made a compelling argument why proceeding with this litigation will require it to abandon the stakeholder outreach process in which it has expressed such confidence.

### C. Dow Agrosciences and CropLife America's Joint Motion to Stay

Defendant Intervenors argue that the Court should stay this case until the Fourth Circuit Court of Appeals issues its decision in their appeal of the Maryland case. They argue that the Court should extend the stay because (1) there is a "substantial possibility" that the Fourth Circuit will overturn the Maryland District Court decision, and (2) that decision could render moot any activity in this case. They argue that a further stay of these proceedings will conserve judicial resources and will not prejudice the Plaintiffs. These arguments are equally unpersuasive.

This Court may stay its proceedings pending the outcome of a related matter if it is "efficient for its own docket and the fairest course for the parties." Mediterranean Enters., Inc. v. Ssangyong Corp., 708 F.2d 1458 (9th Cir. 1983). To the extent that conservation of judicial resources favors a continued stay, resources will only be

ORDER - 11

conserved if the Court of Appeals decides in Defendants' favor. In the event that the Court of Appeal's decision is adverse to the Defendants, there would be no conservation of judicial or litigant resources. Instead, this matter will have been unnecessarily delayed again. Here, Defendant Intervenors' argument that the Fourth Circuit is likely to overturn the Maryland District Court is conclusory and unsupported by authority.[5]

Defendant Intervenors argue that the Maryland District Court's decision contains "several" reversible errors, but only identifies a single error. See Dow AgroSciences LLC and Croplife America Joint Motion to Stay at 3; Reply of Intervenor-Defendants Croplife America and Dow Agrosciences in Support of Motion to Stay at 1-2 (docket no. 72). Defendant Intervenors claim that the Maryland court's decision to allow NMFS to submit a supplemental declaration with its motion for summary judgment in that action is reversible error, arguing that the court's reasoning has been rejected by "several" Courts of Appeal. Dow AgroSciences LLC and Croplife America Joint Motion to Stay at 3. But Defendant Intervenors do not cite to a single opinion that is at odds with the Maryland District Court's reasoning on this point. Moreover, the District Court's order appears to be well reasoned and supported. The Maryland Court noted that "[a]lthough the Fourth Circuit has not addressed this issue, six lower appellate courts have held that

---

[5] Under the Administrative Procedure Act, an agency's final action must be upheld unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). This standard is "highly deferential, presuming the agency action to be valid and [requires] affirming the agency action if a reasonable basis exists for its decision." Kern County Farm Bureau v. Allen, 450 F.3d 1072 (9th Cir. 2006). Here, the District of Maryland found that the OP BiOp is not arbitrary and capricious. Dow AgroSciences, 821 F.Supp.2d at 801 (D. Md. 2011).

agencies may submit declarations that 'illuminate[ ]' or 'explain' the original record, but not declarations that 'advance new rationalizations for the agency's action.'" Dow AgroSciences, 821 F.Supp.2d at 799 (D. Md. 2011) (citing Yale-New Haven Hosp. v. Leavitt, 470 F.3d 71, 82 (2nd Cir. 2006) (holding that an agency may supplement the record on judicial review if the proffered evidence illuminates the original record and does not advance new rationalizations for the agency's action); Envtl. Def. Fund v. Costle, 657 F.2d 275, 285 (D.C. Cir. 1981) ("The new material should be merely explanatory of the original record and should contain no new rationalizations."); Sierra Club v. Marsh, 976 F.2d, 763, 772-72 (1st Cir. 1992) (same); Sierra Club v. United States Army Corps of Engr's, 771 F.2d 409, 413 (8th Cir. 1985) (same); Bunker Hill v. EPA, 572 F.2d 1286, 1292 (9th Cir. 1977) (same)). Contrary to Defendant Intervenors' conclusory allegations, the Maryland District Court decision appears to be thorough and well reasoned on this point.

To the extent that Defendant Intervenors also argues that the Maryland District Court gave too much deference to NMFS's conclusions in the BiOps, the Appellate Court is unlikely to reverse given that it will apply the same deferential standard applicable to review of an agency action.[6] Defendant Intervenors fail to support their request for another stay with any reasoned argument or citation.

---

[6] This argument is made for the first time in Defendant Intervenors' reply brief. See Reply of Intervenor-Defendants Croplife America and Dow Agrosciences in Support of Motion to Stay at 2 (docket no. 72).

Defendant Intervenors further argue that staying these proceedings will not result in harm to the Plaintiffs because, essentially, they have already been waiting for the EPA to implement the BiOps for a significant period of time. This argument is illogical and contrary to common sense. NMFS issued the BiOps at issue in 2008 and 2009 respectively. To date, EPA has not put in place any of the RPAs or RPMs contained in the BiOps or put in place other alternative protective measures. Until EPA takes steps to implement the BiOPs or put in place other protective measures, the listed salmoids are being exposed to concentrations of the listed pesticides that NMFS found in the BiOps to result in jeopardy and adverse modification. Staying this case until the Fourth Circuit issues an opinion in Defendant Intervenors' appeal could mean a delay of months or years in Plaintiffs' case.[7] Defendant Intervenors have not demonstrated that this would be efficient or the fairest course for the parties.

**Conclusion**

For the foregoing reasons, Federal Defendant's Motion for Extension of Stay, docket no. 66, is DENIED, and Dow Agroscience and CropLife America Joint Motion to Stay, docket no. 67, is DENIED. To facilitate entry of an appropriate scheduling order in this matter, and pursuant to Fed. R. Civ. P. 16 and Local Rule CR 16, counsel are directed to confer and file a Joint Status Report within thirty (30) days of the entry of this Order.

---

[7] See 62 WASH. & LEE L. REV 1733, 1740 (2005) ("Between FY 1995 and FY 1997, the [Fourth Circuit's] median time for counseled civil, non-habeas cases terminated after hearing or submission was 12.6 months from notice of appeal to final disposition." (citing Comm'n on Structural Alternatives for the Fed. Courts of Appeals, 95 tbl.7 (1998)).

The Joint Status Report must contain the following information by corresponding paragraph numbers.

1. A concise statement of the positions of the parties concerning the relief requested in the amended complaint.

2. A summary of the procedural posture of the case.

3. A proposed deadline for filing of the administrative record.

4. A proposed deadline for filing of dispositive motions.

5. An indication whether any party wishes a scheduling conference before a scheduling order is entered in this case.

If the parties are unable to agree on any part of the Joint Status Report, they may answer in separate paragraphs.  <u>No separate reports are to be filed.</u>

IT IS SO ORDERED.

The Clerk is directed to send a copy of this Order to all counsel of record.

DATED this 20th day of June, 2012.

*[signature]*
THOMAS S. ZILLY
United States District Judge