1  STEPHEN D. MASHUDA (WSB #36968)          THE HONORABLE THOMAS S. ZILLY
   AMANDA W. GOODIN (WSB #41312)
2  Earthjustice
   705 Second Avenue, Suite 203
3  Seattle, WA  98104
   (206) 343-7340 | Phone
4  (206) 343-1526 | Fax
   smashuda@earthjustice.org
5  agoodin@earthjustice.org

6
   *Attorneys for Plaintiffs, Northwest Center for*
7  *Alternatives to Pesticides, Pacific Coast Federation*
   *of Fishermen's Associations, Institute for Fisheries*
8  *Resources, Defenders of Wildlife, Joel Kawahara,*
   *and Edward Deryckx*
9
                    UNITED STATES DISTRICT COURT
10              FOR THE WESTERN DISTRICT OF WASHINGTON

11 NORTHWEST CENTER FOR ALTERNATIVES    )
12 TO PESTICIDES, PACIFIC COAST FEDERATION )   Civ. No.  10-01919-TSZ
   OF FISHERMEN'S ASSOCIATIONS, INSTITUTE )
13 FOR FISHERIES RESOURCES, DEFENDERS OF )
   WILDLIFE, JOEL KAWAHARA, and EDWARD   )    PLAINTIFFS' OPPOSITION TO
14 DERYCKX,                             )     JOINT MOTION FOR JUDGMENT
                                        )     ON THE PLEADINGS
15             Plaintiffs,              )
                                        )
16       v.                            )
                                        )
17                                      )
   UNITED STATES ENVIRONMENTAL          )
18 PROTECTION AGENCY,                   )
                                        )
19             Defendant,              )
                                        )
20       v.                            )
                                        )
21 CROPLIFE AMERICA, RISE, OREGONIANS FOR )
22 FOOD AND SHELTER, WASHINGTON FRIENDS  )
   OF FARMS AND FORESTS; DOW            )
23 AGROSCIENCES LLC; and WILLAPA/GRAYS   )
   HARBOR OYSTER GROWERS ASSOCIATION,    )
24                                      )
               Proposed Intervenor-Defendants.  )
25 _____ )

26

27 PLAINTIFFS' OPPOSITION TO JOINT MOTION FOR        *Earthjustice*
   JUDGMENT ON THE PLEADINGS                         *705 Second Ave., Suite 203*
28 (Civ. No. 10-01919-TSZ)                           *Seattle, WA  98104*
                                                     *(206) 343-7340*

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................ 1

STANDARD OF REVIEW .............................................................................. 1

    I.      PLAINTIFFS HAVE STANDING TO PURSUE THEIR CLAIMS. .................... 3

          A.   Plaintiffs Demonstrated Standing in the Complaint. ........................................3

          B.   The Court Can Consider Standing Declarations.................................................9

    II.     PLAINTIFFS HAVE SUFFICIENTLY PLED THEIR ESA SECTION 7 CLAIM................................................................................................................ 10

          A.   EPA Has a Nondiscretionary Duty to Ensure That Its Actions Do Not Jeopardize Listed Salmonids. ..........................................................................10

          B.   Plaintiffs' Complaint Alleges Facts Sufficient to State a Claim That EPA Has Violated Section 7 of the ESA. .......................................................13

    III.    PLAINTIFFS HAVE ADEQUATELY PLED THEIR ESA SECTION 9 CLAIM................................................................................................................ 14

CONCLUSION................................................................................................. 19

PLAINTIFFS' OPPOSITION TO JOINT MOTION FOR
JUDGMENT ON THE PLEADINGS
(Civ. No. 10-01919-TSZ)   -i-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

TABLE OF AUTHORITIES

**Page(s)**

CASES

Accredited Home Lenders, Inc. v. City of Seattle,
  No. C07-272MJP, 2007 WL 1977137 (W.D. Wash. July 2, 2007) ...........................................2

al-Kidd v. Ashcroft,
  580 F.3d 949 (9th Cir. 2009) rev'd on other grounds sub nom Ashcroft v. al-Kidd,
  131 S. Ct. 2074 (2011)..................................................................................................2, 19

Ashcroft v. Iqbal,
  556 U.S. 662 (2009)............................................................................................... passim

Ass'n for Los Angeles Deputy Sheriffs v. County of Los Angeles,
  648 F.3d 986 (9th Cir. 2011) ...................................................................................2

Bell Atlantic Corp. v. Twombly,
  550 U.S. 544 (2007)............................................................................................... passim

Bennett v. Spear,
  520 U.S. 154 (1997)............................................................................................... passim

Browne v. Avvo Inc.,
  525 F. Supp. 2d 1249 (W.D. Wash. 2007)..................................................................14

Catholic League for Religious and Civil Rights v. City & Cnty. of San Francisco,
  624 F.3d 1043 (9th Cir. 2010) .................................................................................3

Cetacean Cmty. v. Bush,
  386 F.3d 1169 (9th Cir. 2004) .................................................................................10

Chapman v. Pier 1 Imports (U.S.) Inc.,
  631 F.3d 939 (9th Cir. 2011) ...................................................................................7

Consol. Salmonid Cases,
  688 F. Supp. 2d 1013, 1022 (E.D. Cal. 2010)..........................................................13

Dow AgroSciences LLC v. Nat'l Marine Fisheries Serv.,
  821 F. Supp. 2d 792 (D. Md. 2011) ........................................................................18

Dworkin v. Hustler Magazine, Inc.,
  867 F.2d 1188 (9th Cir. 1989) ...................................................................................2

Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,
  528 U.S. 167 (2000)..................................................................................................6

PLAINTIFFS' OPPOSITION TO JOINT MOTION FOR
JUDGMENT ON THE PLEADINGS
(Civ. No. 10-01919-TSZ)   -ii-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

Fund for Animals v. Lujan,
   962 F.2d 1391 (9th Cir. 1992) ...............................................................................18

Greenpeace v. Nat'l Marine Fisheries Serv.,
   80 F. Supp. 2d 1137 (W.D. Wash. 2000)..................................................................8

Inst. for Wildlife Prot. v. Norton,
   337 F. Supp. 2d 1223 (W.D. Wash. 2004)..................................................................9

Keithly v. Intelius, Inc.,
   764 F. Supp. 2d 1257 (W.D. Wash. 2011)....................................................2, 4, 16

Lujan v. Defenders of Wildlife,
   504 U.S. 555 (1992).................................................................................................6

Maya v. Centex Corp.,
   658 F.3d 1060 (9th Cir. 2011) .............................................................................3, 9

McSherry v. City of Long Beach,
   423 F.3d 1015 (9th Cir. 2005) .................................................................................2

Moss. v. U.S. Secret Serv.,
   572 F.3d 962 (9th Cir. 2009) ...................................................................................2

Nat'l Wildlife Fed'n v. Fed. Emergency Mgmt. Agency,
   345 F. Supp. 2d 1151 (W.D. Wash. 2004).................................................................8

NWF v. NMFS,
   524 F.3d 917 (9th Cir. 2008) .................................................................................12

Opel v. Boeing Co.,
   No. C11–1890RSM, 2012 WL 1441405 (W.D. Wash. 2012)...........................3, 17

Or. Natural Desert Ass'n v. Tidwell,
   716 F. Supp. 2d 982 (D. Or. 2010) ...................................................................15, 18

Pac. Rivers Council v. U.S. Forest Serv.,
   --- F.3d ---, 2012 WL 2333558 (9th Cir. June 20, 2012)........................................7

Pyramid Lake Paiute Tribe of Indians v. Dep't of the Navy,
   898 F.2d 1410 (9th Cir. 1990) ...............................................................................11

Ramsey v. Kantor,
   96 F.3d 434 (9th Cir. 1996) ...................................................................................14

Sierra Club v. Marsh,
   816 F.2d 1376 (9th Cir.1987) ..........................................................................11, 13

PLAINTIFFS' OPPOSITION TO JOINT MOTION FOR
JUDGMENT ON THE PLEADINGS
(Civ. No. 10-01919-TSZ)   -iii-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

Southern Pacific R. Co. v. U.S.,
    168 U.S. 1 (1897)............................................................................................18

Sw. Ctr. for Biological Diversity v. U.S. Bureau of Reclamation,
    143 F.3d 515 (9th Cir. 1998) ....................................................................12, 13

Swinomish Indian Tribal Cmty. v. Skagit Cnty. Dike Dist. No. 22,
    618 F. Supp. 2d 1262 (W.D. Wash. 2008)....................................................17

Tribal Village of Akutan v. Hodel,
    869 F.2d 1185 (9th Cir. 1988) ................................................................11, 12

United States v. Ritchie,
    342 F.3d 903 (9th Cir. 2003) ........................................................................16

Village of False Pass v. Watt,
    565 F. Supp. 1123 (D. Alaska 1983), aff'd by Village of False Pass v. Clark, 733 F.2d
    605 (9th Cir. 1984).........................................................................................12

Washington Toxics Coalition,
    No. 01-132-C, Order on Injunctive Relief (Aug. 8, 2003) (attached as Exhibit 1) ..................4

Washington Toxics Coalition v. EPA,
    413 F.3d 1024 (9th Cir. 2005) .................................................................10, 5

Washington Toxics Coalition v. U.S. Dept. of Interior,
    457 F. Supp. 2d 1158 (W.D. Wash. 2006)....................................................12

**STATUTES**

5 U.S.C. § 706(2)(A)..........................................................................................14

7 U.S.C. § 136a(a)................................................................................................7

16 U.S.C. § 1536(a)(2).................................................................................1, 11, 13

16 U.S.C. § 1536(o)(2) ..................................................................................14, 15

16 U.S.C. § 1538..........................................................................................1, 14

**REGULATIONS**

50 C.F.R. § 402.02.............................................................................................11

PLAINTIFFS' OPPOSITION TO JOINT MOTION FOR
JUDGMENT ON THE PLEADINGS
(Civ. No. 10-01919-TSZ)   -iv-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

1

2

INTRODUCTION

Plaintiffs, Northwest Center for Alternatives to Pesticides, Pacific Coast Federation of

Fishermen's Associations, Institute for Fisheries Resources, Defenders of Wildlife, Joel Kawahara,

and Edward Deryckx ("Plaintiffs"), have challenged the Environmental Protection Agency's

("EPA") failure to comply with its paramount duty under the Endangered Species Act to ensure that

its actions do not push twenty-seven species of West Coast salmon and steelhead to extinction.

Between three and four years ago, the National Marine Fisheries Service ("NMFS") issued two

Biological Opinions ("BiOps") evaluating the effects that six highly toxic EPA-registered pesticides

have on these endangered and threatened fish stocks.  NMFS concluded that use of these pesticides

as currently authorized by EPA kills and harms salmon and steelhead to such a degree that their

continued unmitigated use jeopardizes the continued existence of—and destroys or adversely

modifies critical habitat for—nearly every species of these fish on the West Coast.

When it became clear that EPA was failing to take any action to prevent this substantial

harm, Plaintiffs filed this suit to compel EPA to mitigate the impacts of its pesticide registrations.

After failing to further delay this case with a third request to stay the proceedings, several

Intervenors have now moved to dismiss NCAP's Complaint.  Intervenor-Defendants Dow

AgroSciences and CropLife America, et al.'s Joint Motion for Judgment on the Pleadings (Dkt.

#80) (filed Aug. 9, 2012) ("Br.").  Intervenors argue that Plaintiffs' complaint failed to demonstrate

standing, and failed to allege a sufficiently detailed set of facts to seek relief for EPA's violations of

§ 7 and § 9 of the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1536(a)(2), 1538.  Each of these

arguments is premised on a misunderstanding of the law, a mischaracterization of Plaintiffs' claims,

and a highly selective reading of Plaintiffs' Amended Complaint.  The Court should reject this

eleventh-hour effort to dismiss or further delay resolution of Plaintiffs' claims.

STANDARD OF REVIEW

A motion for judgment on the pleadings under Fed. R. Civ. P 12(c) "may be granted only if,

PLAINTIFFS' OPPOSITION TO JOINT MOTION FOR
JUDGMENT ON THE PLEADINGS
(Civ. No. 10-01919-TSZ)   -1-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

1    taking all the allegations in the pleading as true, the moving party is entitled to judgment as a matter

2    of law." McSherry v. City of Long Beach, 423 F.3d 1015, 1021 (9th Cir. 2005).  Because a Rule

3    12(c) motion for judgment on the pleadings is "functionally identical" to a Rule 12(b) motion to

4    dismiss, "the same standard of review applicable to a Rule 12(b) motion applies to its Rule 12(c)

5    analog." Dworkin v. Hustler Magazine, Inc., 867 F.2d 1188, 1192 (9th Cir. 1989); see also

6    Accredited Home Lenders, Inc. v. City of Seattle, No. C07-272MJP, 2007 WL 1977137, at *2

7    (W.D. Wash. July 2, 2007) (court applies "the same standards for granting the appropriate relief or

8    denying the motion as it would have employed had the motion been brought prior to the defendant's

9    answer under Rules 12(b)(1), 12(b)(6)…."). As Intervenors recognize, whether Plaintiffs have

10   stated a claim on which relief can be granted is evaluated under the standards of Rule 12(b)(6) and

11   whether the Court has subject matter jurisdiction is evaluated under Rule 12(b)(1).  Br. at 4.

12           In evaluating a motion to dismiss under Rule 12(b)(6), the Court "accept[s] all factual

13   allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the

14   nonmoving party." Ass'n for Los Angeles Deputy Sheriffs v. County of Los Angeles, 648 F.3d

15   986, 991 (9th Cir. 2011).  In applying Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and

16   Ashcroft v. Iqbal, 556 U.S. 662 (2009) to Rule 12(b)(6) motions, the Ninth Circuit has required only

17   that a complaint's "non-conclusory 'factual content,' and reasonable inferences from that content,

18   [be] plausibly suggestive of a claim entitling the plaintiff to relief." Moss. v. U.S. Secret Serv., 572

19   F.3d 962, 969 (9th Cir. 2009) (citing Iqbal, 556 U.S. at 678); see also al-Kidd v. Ashcroft, 580 F.3d

20   949, 977 (9th Cir. 2009) (stating that Twombly and Iqbal require only "plausible grounds to infer

21   the existence of a claim for relief") rev'd on other grounds sub nom Ashcroft v. al-Kidd, 131 S. Ct.

22   2074 (2011); Keithly v. Intelius, Inc., 764 F. Supp. 2d 1257, 1260-61 (W.D. Wash. 2011) ("A claim

23   will not be dismissed unless the allegations in support thereof, taken as a whole, fail to give rise to a

24   plausible inference of actionable conduct.").  Under Twombly, Plaintiffs must allege "enough fact

25   to raise a reasonable expectation that discovery will reveal evidence" to support the legal violations

26

27   PLAINTIFFS' OPPOSITION TO JOINT MOTION FOR
     JUDGMENT ON THE PLEADINGS
28   (Civ. No. 10-01919-TSZ)   -2-

alleged. 550 U.S. at 556. <u>See also</u> <u>Bennett v. Spear</u>, 520 U.S. 154, 168 (1997) (court must

"'presum[e] that general allegations embrace those specific facts that are necessary to support the

claim'") (citations omitted). So long as the complaint "provide[s] fair notice of the nature of the

claim and the grounds on which the claim rests[,] . . . it need not include the facts necessary to carry

the plaintiff's burden, or detailed factual allegations." <u>Opel v. Boeing Co.</u>, No. C11–1890RSM,

2012 WL 1441405, at *3 (W.D. Wash. 2012).

 Review of a Rule 12(b)(1) motion challenging standing involves a "threshold question" that

is "distinct from the merits of the claim." <u>Maya v. Centex Corp.</u>, 658 F.3d 1060, 1068 (9th Cir.

2011). "At the pleading stage, general factual allegations of injury resulting from the defendant's

conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace

those specific facts that are necessary to support the claim.'" <u>Id.</u> (citations omitted, alterations in

original). . As the Ninth Circuit explained, the pleading standards applicable to 12(b)(6) motions

articulated in <u>Twombly</u>, 550 U.S. 544 and <u>Iqbal</u>, 556 U.S. 662 are inapplicable to a standing

challenge in a 12(b)(1) motion. In contrast to the Court's inquiry under 12(b)(6), which "determines

whether a claim is one for which relief can be granted if factually true," <u>Catholic League for</u>

<u>Religious and Civil Rights v. City & Cnty. of San Francisco</u>, 624 F.3d 1043, 1049 (9th Cir. 2010)

(en banc), the "jurisdictional question of standing precedes, and does not require, analysis of the

merits." <u>Centex</u>, 658 F.3d at 1068 (citations omitted). "We simply note that <u>Twombly</u> and <u>Iqbal</u>

deal with a fundamentally different issue, and that the court's focus should be on the jurisprudence

that deals with constitutional standing." <u>Id.</u>

I. **PLAINTIFFS HAVE STANDING TO PURSUE THEIR CLAIMS.**

 A. <u>Plaintiffs Demonstrated Standing in the Complaint.</u>

 Plaintiffs' First Amended Complaint for Declaratory and Injunctive Relief (Dkt. #40) (filed

May 3, 2011) ("Compl.") describes in detail how EPA's violations of the ESA are harming listed

salmon and steelhead and how that harm injures the Plaintiffs' specific interests. Intervenors

PLAINTIFFS' OPPOSITION TO JOINT MOTION FOR
JUDGMENT ON THE PLEADINGS
(Civ. No. 10-01919-TSZ)   -3-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

assert—based on a highly selective reading of the Complaint—that Plaintiffs have made "only the most conclusory statements regarding injury," Br. at 6, but an examination of the Complaint as a whole contradicts those assertions.

As Plaintiffs outlined in the Complaint, the pesticides at issue in this case "are toxic substances that can harm salmon and steelhead (collectively 'salmonids') by causing death; adversely affecting salmonid food supplies and habitat; and impairing salmonid swimming, predator avoidance, and reproduction." Compl. at ¶ 2. These and other "pesticides have been detected in each of the major salmonid rivers in the Pacific Northwest and California monitored by the U.S. Geological Survey, sometimes at levels unsafe for aquatic life." Id.

After an exhaustive analysis of the best available scientific and commercial data, NMFS confirmed that these pesticides harm salmon and steelhead in a variety of ways, "including direct mortality and injury to adults and juveniles, and harm to olfactory (homing) sense, impaired growth and feeding, reproductive impairment and impacts to salmonid prey." Id. at ¶ 8. See also id. at ¶¶ 39, 44 (similar allegations of harm). NMFS also determined that these six pesticides cause unauthorized "take" of listed salmonids. Id. at ¶¶ 39, 44. Based on these impacts, NMFS concluded that continued use of these pesticides as currently authorized by EPA's registrations would harm salmonids to such an extent that it would jeopardize the continued existence of nearly every salmonid species and destroy or adversely modify their designated critical habitat. See id. at ¶¶ 37, 42 (summarizing NMFS's findings for each pesticide).[1]

---

[1] To the extent that Intervenors would require Plaintiffs to reproduce the findings of the BiOps in the Complaint, they overlook the rule that the Court may "consider documents referenced extensively in the complaint, documents that form the basis of plaintiffs' claim, and matters of judicial notice when determining whether the allegations of the complaint state a claim upon which relief can be granted." Keithly v. Intelius, Inc., 764 F. Supp. 2d 1257, 1261 (W.D. Wash. 2011). Moreover, that pesticides harm the salmon and steelhead that Plaintiffs' interests depend upon is not in legitimate dispute. In addition to the expert agency's findings in the BiOps, this Court has already determined that these same pesticides kill and otherwise harm listed salmon and that neither EPA nor the pesticide manufacturers and users could establish that their continued use would not jeopardize the species. See Washington Toxics Coalition, No. 01-132-C, Order on Injunctive Relief (Aug. 8, 2003) slip. Op. at 11-16 (attached as Exhibit 1)

PLAINTIFFS' OPPOSITION TO JOINT MOTION FOR
JUDGMENT ON THE PLEADINGS
(Civ. No. 10-01919-TSZ)   -4-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

To avoid jeopardy and mitigate adverse modification of critical habitat and take caused by the currently-authorized uses of these pesticides, NMFS developed Reasonable and Prudent Alternatives ("RPAs"), Reasonable and Prudent Measures ("RPMs"), and an Incidental Take Statement ("ITS") that must be implemented within one year.  See Compl. at ¶¶ 6-7, 38, 43. Intervenors and Federal Defendant each admit that EPA has not implemented these measures, compare Compl. at ¶ 10 with Federal Defendants' Answer to First Amended Complaint at ¶ 10 (admitting that EPA has not implemented RPAs or RPMs); Dow AgroSciences Answer to First Amended Complaint at ¶ 10 (same).  Plaintiffs detailed that EPA has also not implemented any other alternative or equally protective mitigation measures that would avoid jeopardy.  See Compl. at ¶ 47 (alleging that EPA has not "taken steps to implement any alternative protective measures or steps to implement any other changes to the uses of these pesticides that would avoid jeopardy and adverse modification in response to the BiOps" through registration amendments or any other process to institute protections on the ground); id. at ¶¶ 10, 11, 53 (similar allegations).  But see Br. at 7 (incorrectly concluding that "there simply are no factual allegations" regarding EPA's failure to implement alternative measures).

Contrary to Intervenors' conclusory assertions, Plaintiffs' Complaint goes on to outline precisely how EPA's failure to take any action to avoid jeopardy, adverse modification, or take harms their specific interests.  Plaintiffs alleged that they "use and enjoy salmonids and salmonid habitat in the Pacific Northwest and California for recreational, scientific, aesthetic, cultural, and commercial purposes."  Compl. at ¶ 18.  Plaintiffs then specifically alleged that EPA's failure to comply with the ESA "is allowing toxic pesticides to continue to contaminate the waters of Washington, Oregon, Idaho, and California; harm listed salmonids; and injure the commercial enterprises and communities that depend on salmonid fishing for their livelihoods," id. at ¶ 10, and

---

(concluding that continued use of these six and other pesticides harms the species); Washington Toxics Coalition, 413 F.3d at 1035 (EPA bears "burden of proving that its actions were non-jeopardizing" and could not meet that burden).

PLAINTIFFS' OPPOSITION TO JOINT MOTION FOR
JUDGMENT ON THE PLEADINGS
(Civ. No. 10-01919-TSZ)   -5-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

that "EPA's failure to implement the RPAs in NMFS's OP and Carbamate BiOps results in inadequate mitigation of pesticide uses and harms these individuals' and members' past, present, and future enjoyment of salmonids and salmonid habitat," id. at ¶ 18.

The Complaint also more specifically states each Plaintiff's interest in salmon and steelhead and how EPA's violations of the ESA harm salmonids and hence, those interests. See, e.g., Compl. at ¶ 11 (detailing that NCAP "works to ensure that pesticides registered in the United States will not harm threatened and endangered salmonids," that its members "use the waters of California, Oregon, and Washington for recreational, commercial, and aesthetic pursuits including salmonid fishing, boating, and wildlife photography," and that "the inadequately mitigated use of the pesticides in the Pacific Northwest and California harms salmonids and impairs the interests of NCAP and its members"); id. at ¶ 13 (explaining that "PCFFA is an association of commercial fishermen that works to protect salmonid habitat and promote restoration where salmonid habitat is degraded. … [that m]any of PCFFA's members derive all or part of their income from the harvesting of Pacific salmonids" and that "continued use of pesticides without adequate protection for salmonids impairs the commercial interests of PCFFA and its members."); id. at ¶ 16 (explaining that "Mr. Kawahara is a commercial fisherman who derives both commercial and aesthetic benefits from salmonids in the waters of the Pacific Northwest, California, and Alaska" and that "continued use of pesticides without adequate protection for salmonids in the Pacific Northwest and California harms these fish and [therefore] impairs these interests."); id. at ¶¶ 15, 17 (similar allegations for Defenders of Wildlife and Edward Deryckx).[2]  It is an unremarkable corollary that fewer salmon and steelhead will harm each of the Plaintiffs' salmonid-dependent

---

[2] Intervenors cannot dispute that the "desire to use or observe an animal species, even for purely esthetic purposes, is undeniably a cognizable interest for purposes of standing."  Lujan v. Defenders of Wildlife, 504 U.S. 555, 562-63 (1992).  Moreover, the Supreme Court has held that "environmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons 'for whom the aesthetic and recreational values of the area will be lessened' by the challenged activity."  Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 182 (2000) (quoting Sierra Club v. Morton, 405 U.S. 727, 735 (1972)).

PLAINTIFFS' OPPOSITION TO JOINT MOTION FOR
JUDGMENT ON THE PLEADINGS
(Civ. No. 10-01919-TSZ)   -6-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

interests.  See, e.g., Pac. Rivers Council v. U.S. Forest Serv., --- F.3d. ---, 2012 WL 2333558, at *8
(9th Cir. June 20, 2012) (finding "a concrete connection between the interests of Pacific Rivers'
members in enjoying the forests" where increased logging rates "will affect their continued use and
enjoyment of the forests" and members "will come into contact with affected areas") (internal
citations omitted).

These specific factual allegations distinguish this case from Chapman v. Pier 1 Imports
(U.S.) Inc., 631 F.3d 939, 954-55 (9th Cir. 2011), where the Ninth Circuit found that a disabled
plaintiff lacked standing to challenge alleged access barriers to a store because he failed to identify
"what those barriers were and how his disability was affected by them so as to deny him the 'full
and equal' access that would satisfy the injury-in-fact requirement." Id. at 954.  The plaintiff in that
case had merely attached a list—which the Court characterized as "'a wholesale audit of the
defendant's premises'"—of all of the potential ADA violations at the store, that did not "connect[]
the alleged violations to Chapman's disability, or indicat[e] whether or not he encountered any one
of them in such a way as to impair his full and equal enjoyment of the Store." Id. at 955.  Here, in
contrast, Plaintiffs have described how pesticides harm salmon and steelhead, have outlined their
cognizable interests in those fish, and alleged that the continued unmitigated use of these pesticides
harm and further suppress these fish populations, and consequently, injure Plaintiffs' use and
enjoyment of these fish for commercial, recreational, scientific, and aesthetic purposes.  These are
not mere "formulaic recitations" of the ESA's standards—they are assertions of particular injury to
Plaintiffs' concrete interests that are caused by EPA's violations of the ESA. Id. at 955 n.9.

Intervenors' generic contention that Plaintiffs have not demonstrated that these injuries are
caused by EPA is similarly hollow.  EPA has the duty to regulate pesticides under the Federal
Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), which makes it illegal to sell or use a
pesticide in the United States without approval from—and compliance with conditions set by—EPA
on the registered pesticide label.  7 U.S.C. § 136a(a); id. § 136j(a)(G).  Plaintiffs have challenged

PLAINTIFFS' OPPOSITION TO JOINT MOTION FOR
JUDGMENT ON THE PLEADINGS
(Civ. No. 10-01919-TSZ)   -7-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

EPA's failure to ensure that its pesticide registrations and labels governing pesticide use comply with its substantive obligations to avoid jeopardy, adverse modification of critical habitat, and take. See, e.g., Compl. at ¶¶ 18, 47, 54.  EPA's failure to do so results in *authorized* pesticide use that harms and kills listed salmonids and directly injures Plaintiffs.  See supra at 4-7 (describing allegations of harm to salmonids and Plaintiffs' interests).  Those injuries are plainly caused by EPA.[3]  Indeed, Plaintiffs alleged throughout their complaint that the harm to salmonids and injury to their interests that depend on salmonids, were directly traceable to EPA's failure to mitigate impacts of the six pesticides through implementation of the RPAs or any other equivalent protective measures.  See, e.g., Compl. at ¶¶ 3, 10, 11, 18, 47, 54.

Finally, as Intervenors' tellingly unsupported assertion indicates, there is no legitimate dispute that Plaintiffs' injuries can be redressed by this Court. Br. at 7.  The only relevant question for assessing redressability is whether the court "possesses the ability to remedy the harm that a petitioner asserts."  Nat'l Wildlife Fed'n, 345 F. Supp. 2d at 1165 (citations omitted).  This is a legal, not factual, determination.   Here, Plaintiffs have asserted both substantive and procedural ESA claims and have asked this Court to remedy those violations through declaratory and injunctive relief that would alleviate the harm to listed salmon and steelhead.  See Compl. at ¶¶ 11, 47, 54, 63, and Prayer for Relief ¶¶ A-C.  There is no question that, if the Court finds a violation of the ESA, it can issue the appropriate relief.  As this Court has succinctly noted, "[a] substantive or procedural violation of the ESA gives rise to a legally redressable injury."  Greenpeace v. Nat'l Marine Fisheries Serv., 80 F. Supp. 2d 1137, 1151 (W.D. Wash. 2000).

---

[3] Although Intervenors present no specific argument about causation, this Court and the Ninth Circuit have made clear that the "'causation' element of standing 'is only implicated where the concern is that an injury caused by a third party is too tenuously connected to the acts of the defendant.'"  Nat'l Wildlife Fed'n v. Fed. Emergency Mgmt. Agency, 345 F. Supp. 2d 1151, 1162 (W.D. Wash. 2004) (citations omitted).  Those concerns are inapplicable here where EPA is responsible for regulating and establishing the lawful uses of pesticides.  See id. at 1162-63 (holding that FEMA's flood insurance program induced and enabled private development in floodplains that harmed listed salmonids).

PLAINTIFFS' OPPOSITION TO JOINT MOTION FOR
JUDGMENT ON THE PLEADINGS
(Civ. No. 10-01919-TSZ)   -8-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

1    In short, the Complaint more than sufficiently alleges injury to Plaintiffs' concrete,

2    particularized, legally-protected interests in salmon and steelhead that are caused by EPA's

3    violations of the ESA and that can and would be redressed by a declaration and injunction from this

4    Court directing EPA to comply with its substantive duties to avoid jeopardy and adverse

5    modification of critical habitat and to cease unpermitted take of these fish.  Because this level of

6    detail is more than enough to establish this Court's subject matter jurisdiction, the Court should

7    reject Intervenors' conclusory motion to dismiss under 12(b)(1).  See Centex, 658 F.3d at 1068-69.

8         B.    The Court Can Consider Standing Declarations.

9    To the extent that more detail is required to determine whether Plaintiffs have standing

10   sufficient to survive a 12(b)(1) motion (and since Plaintiffs would demonstrate more particular facts

11   to establish standing at the summary judgment phase), the Court may consider the attached

12   declarations of Glen H. Spain and Matthew Ramsey, who provide the detail necessary to establish

13   standing in this case at the summary judgment phase.  When reviewing a challenge to standing

14   under Rule 12(b)(1), "the Court is not restricted to the face of the pleadings, but may review any

15   evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of

16   jurisdiction."  Inst. for Wildlife Prot. v. Norton, 337 F. Supp. 2d 1223, 1226 (W.D. Wash. 2004).

17   As the attached declarations make clear, Plaintiffs fulfill each of the requirements necessary

18   to demonstrate standing.  Mr. Spain and Mr. Ramsey describe in detail their—and the

19   organizations' other members'—use and enjoyment of salmon and steelhead for economic,

20   recreational, and aesthetic benefits.  See Declaration of Glen H. Spain at ¶¶ 2, 6, 8-12; Declaration

21   of Matthew Ramsey at ¶¶ 3-8.  They detail the harm to their legally-protectable interests in salmon

22   and steelhead caused by EPA's failure to mitigate the current authorization of these pesticides.

23   Spain Decl. at ¶¶ 13-15, 18-19; Ramsey Decl. at ¶¶ 9-13.  Mr. Spain and Mr. Ramsey also state their

24   belief that these injuries can be redressed by an order from this Court directing EPA's compliance

PLAINTIFFS' OPPOSITION TO JOINT MOTION FOR
JUDGMENT ON THE PLEADINGS
(Civ. No. 10-01919-TSZ)   -9-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

1  with the ESA.  Spain Decl. at ¶¶ 16, 20; Ramsey Decl. at ¶ 14.[4]

2       Whether based on the allegations in the Complaint, the attached declarations, or both, this

3  Court should find that it has subject matter jurisdiction and deny Intervenors' motion for judgment

4  on the pleadings on this basis.

5  II.   PLAINTIFFS HAVE SUFFICIENTLY PLED THEIR ESA SECTION 7 CLAIM.

6       Intervenors next contend that Plaintiffs have failed to state a claim that EPA has violated

7  Section 7 of the ESA.  This argument, however, is based entirely on a mischaracterization of

8  Plaintiffs' Section 7 claim as alleging that EPA is "legally obligated to implement the RPAs and

9  RPMs suggested in the BiOp…."  Br. at 10.  While Intervenors expend considerable effort attacking

10  this strawman, Plaintiffs' Complaint, the statute, and the case law make clear that EPA has a

11  substantive duty to avoid jeopardy and adverse modification of critical habitat.  Plaintiffs have set

12  forth detailed allegations demonstrating that EPA has failed to fulfill that duty in this case by

13  implementing *any* measures—whether the RPAs or any other alternative and equally effective

14  measures—to avoid jeopardy and adverse modification.[5]

15       A.   EPA Has a Nondiscretionary Duty to Ensure That Its Actions Do Not Jeopardize
16            Listed Salmonids.

17       As established by Washington Toxics Coalition v. EPA, 413 F.3d 1024, 1033 (9th Cir.

18  2005), Section 7 of the ESA requires EPA to ensure that its ongoing authorizations of pesticide use

19  _____

20  [4] These two declarations are sufficient by themselves for this Court to determine that Plaintiffs
    have standing at the summary judgment phase.  See Cetacean Cmty. v. Bush, 386 F.3d 1169,
21  1174 (9th Cir. 2004) ("We have jurisdiction if at least one named plaintiff has standing to
    sue….").  To the extent necessary, however, Plaintiffs may provide additional standing
22  declarations at the summary judgment stage.

23  [5] While Intervenors elsewhere parenthetically admit that Plaintiffs did allege that EPA has failed
    to implement any alternative protective measures to avoid jeopardy, see Br. at 3, 10-11, they
24  attempt to ignore these allegations by referring to their flawed arguments about standing.  But for
    all of the reasons discussed supra 3-9, Intervenors' standing arguments are based on an
25  inaccurate and selective characterization of Plaintiffs' Complaint.  See, e.g., Compl. ¶¶ 10, 47
    (detailing EPA's failure to take any actions to protect these species); infra at 13-14 [§ II.B.]
26  (explaining why those allegations are not "too vague" under Rule 12(b)(6)).

27  PLAINTIFFS' OPPOSITION TO JOINT MOTION FOR          *Earthjustice*
    JUDGMENT ON THE PLEADINGS                            *705 Second Ave., Suite 203*
28  (Civ. No. 10-01919-TSZ)   -10-                        *Seattle, WA  98104*
                                                          *(206) 343-7340*

are not likely to jeopardize endangered and threatened Pacific salmon.  To carry out that duty, the ESA requires EPA to consult with NMFS on the effects of its pesticide registrations on Pacific salmon.  16 U.S.C. § 1536(a)(2).  The culmination of a formal consultation is a biological opinion by NMFS, such as the OP and Carbamate BiOps referenced throughout the Complaint.[6]  50 C.F.R. § 402.02.  See also Compl. at ¶¶ 37-44.

After the procedural requirements of a consultation are complete, however, the ultimate duty to ensure that pesticide uses will not jeopardize Pacific salmon lies with EPA.  See, e.g., Pyramid Lake Paiute Tribe of Indians v. Dep't of the Navy, 898 F.2d 1410, 1415 (9th Cir. 1990); Compl. at ¶¶ 24, 30, 50, 54 (outlining legal requirements and alleging EPA's failure to fulfill its substantive duty to ensure that its actions do not jeopardize listed salmonids).  As noted in the Complaint, this substantive duty is most easily and safely fulfilled by implementing the RPAs contained in a valid BiOp.  Compl. at ¶ 30.  In Bennett v. Spear, 520 U.S. at 170, the Supreme Court recognized this practicality and found that "[a] Biological Opinion of the sort rendered here alters the legal regime to which agency action is subject," because of its powerfully coercive, "virtually determinative effect" on an agency's action.  The Court noted that while an agency is "technically free" to ignore the measures in a BiOp, the agency "does so at its own peril" as it may be subject to civil or criminal liability for unpermitted take of listed species.  Id.  See also Tribal Village of Akutan v. Hodel, 869 F.2d 1185, 1193 (9th Cir. 1988) (explaining that if the agency "deviates from" the RPAs, it "does so subject to the risk that [it] has not satisfied the standard of Section 7(a)(2).");  Sierra Club v. Marsh, 816 F.2d 1376, 1386 (9th Cir.1987) (action agency violated Section 7 by failing to acquire key replacement habitat required by RPA).

An action agency that chooses not to comply with an RPA must first "articulate its reasons for disagreement (which ordinarily requires species and habitat investigations that are not within the action agency's expertise)," and "runs a substantial risk if its (inexpert) reasons [for disagreement]

---

[6] Those BiOps may be found at http://www.nmfs.noaa.gov/pr/pdfs/pesticide_biop.pdf and http://www.nmfs.noaa.gov/pr/pdfs/carbamate.pdf.

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

1   turn out to be wrong." Bennett, 520 U.S. at 169. See Compl. at ¶¶ 30, 10, 47, 53, 54. EPA (the

2   inexpert agency) carries an especially heavy burden if it chooses to do so here because of the well-

3   documented shortcomings in its methodology for assessing risks posed by pesticides to ESA-listed

4   species. See Washington Toxics Coalition v. U.S. Dept. of Interior, 457 F. Supp. 2d 1158, 1183-

5   1193 (W.D. Wash. 2006) (detailing extensive flaws in EPA's ecological risk assessment process

6   that result in under-protection of listed species and concluding that it does not offer protection

7   equivalent to Services' ESA analyses). The agency must then detail its "alternative, reasonably

8   adequate steps to insure the continued existence of any endangered or threatened species." Village

9   of Akutan, 865 F.2d at 1193.[7]

10         Here, EPA has offered "no justification … for failing to comply with the suggestions of the

11   National Marine Fisheries Service," nor has it implemented any alternative actions.[8] Village of

12   False Pass v. Watt, 565 F. Supp. 1123, 1163 (D. Alaska 1983), aff'd by Village of False Pass v.

13   Clark, 733 F.2d 605 (9th Cir. 1984). See also Compl. at ¶ 47. While EPA technically has the

14   option to (albeit unwisely) carefully document and follow a path that deviates from the RPAs, "ESA

15   compliance is not optional." NWF v. NMFS, 524 F.3d 917, 929 (9th Cir. 2008).[9]

16

17   [7] In Village of Akutan, the agency implemented some RPAs, but adopted different protections
     for other areas. In doing so, the agency "adopted alternative measures [it] considered sufficient
18   to prevent preliminary activities from endangering the whales" and rationally explained its
     decision in a way that "'appear[ed] to have satisfied … NOAA ... for in its final ESA comments
19   on the sale NOAA did not reiterate those recommendations.'" Village of Akutan, 865 F.2d at
     1193 (quoting district court). Here, by contrast, NMFS has explained that even EPA's
20   inadequate proposals are based on a misunderstanding of the BiOp. Letter from Lecky to
     Keigwin (Sept. 30, 2009) at 1-2, available at
21   http://www.nmfs.noaa.gov/pr/pdfs/consultations/letter_
     nmfs_epa.pdf.
22
     [8] Indeed, EPA accepted NMFS's jeopardy conclusions. See, e.g., Sept. 10, 2009 Letter from
23   Richard Keigwin to Jim Lecky at 1, available at http://www.epa.gov/oppfead1/endanger/litstatus/
     11-18-08-nmfs-biop.pdf (recognizing that buffers and other measures are necessary to avoid
24   jeopardy but failing to adopt and act upon those—or another—requirements).

25   [9] None of the cases Intervenors invoke to paint mitigation in RPAs as "optional" involve—let
     alone sanction—an action agency's rejection of an RPA or its failure to take any action to avoid
26   jeopardy. Br. at 10 & n.4. In Sw. Ctr. for Biological Diversity v. U.S. Bureau of Reclamation,

27   PLAINTIFFS' OPPOSITION TO JOINT MOTION FOR
     JUDGMENT ON THE PLEADINGS
28   (Civ. No. 10-01919-TSZ)   -12-

Earthjustice
705 Second Ave., Suite 203
Seattle, WA  98104
(206) 343-7340

B.      <u>Plaintiffs' Complaint Alleges Facts Sufficient to State a Claim That EPA Has Violated Section 7 of the ESA.</u>

Plaintiffs' Complaint specifically alleges the facts to support the claim that EPA has violated its duty to avoid jeopardy under Section 7 of the ESA.  Specifically, Plaintiffs allege in the Complaint that EPA has not implemented the RPAs, Compl. at ¶¶ 10, 18, 37-47, 53-54, nor has it implemented any other measures that would avoid jeopardy, <u>id.</u> at ¶¶ 10, 47, 53-54.  The parties have admitted the first fact, and Intervenors offer only a conclusory assertion that the latter is "too vague to survive <u>Iqbal-Twombly</u> analysis."  Br. at 11.  But Plaintiffs specifically alleged in the Complaint that EPA has not implemented

> a single one of the requirements of NMFS's RPAs and RPMs for these six pesticides.  <u>Nor has EPA taken steps to implement any alternative protective measures or steps to implement any other changes to the uses of these pesticides that would avoid jeopardy and adverse modification in response to the BiOps.</u>  EPA <u>has not implemented any label changes or even begun the process of changing the labels to ensure that registrations for these pesticides comply with the ESA.</u> . . .  [T]o date EPA <u>has not required any on-the-ground changes in use of these pesticides to protect salmonids.</u>  EPA has not addressed its failure to implement the RPA and RPM requirements, nor has it implemented adequate alternative measures to address the continued harm that this delay is causing the species.

Compl. at ¶ 47 (emphases added).[10]  <u>See also id.</u> at ¶ 10 (describing nature of claims); <u>id.</u> at ¶¶ 48-54 (First Claim for Relief); <u>id.</u> at ¶ 54 (alleging that "EPA's failure to implement the RPAs or take any other adequate steps to protect salmonids from these six pesticides and avoid jeopardy or

---

143 F.3d 515, 523 (9th Cir. 1998), for example, the Court merely held that in developing a biological opinion, the U.S. Fish and Wildlife Service could choose among several potential RPA measures—all of which would avoid jeopardy.  <u>Id.</u> ("The Secretary need only have adopted a final RPA which complied with the jeopardy standard and which could be implemented by the agency.").  That choice, however, does not extend to ignoring the RPA altogether or violating its terms.  <u>Id.</u> at 524 (distinguishing <u>Sierra Club v. Marsh</u>, 816 F.2d 1376, where court found substantive and procedural ESA violations from failure to follow critical element of RPA).  <u>See also</u> <u>Consol. Salmonid Cases</u>, 688 F. Supp. 2d 1013, 1022 (E.D. Cal. 2010) (noting that agency "was not 'bound' to accept the proposed RPA, <u>but it did so.</u>") (emphasis added).

[10] EPA has taken no action since May 2010 when several of the Intervenors and others refused to voluntarily change any pesticide registrations.  Letter from Registrants to Richard Keigwin (May 10, 2010) at 1, <u>available at</u> http://www.epa.gov/espp/litstatus/wtc/davids-letter.pdf.

PLAINTIFFS' OPPOSITION TO JOINT MOTION FOR
JUDGMENT ON THE PLEADINGS
(Civ. No. 10-01919-TSZ)   -13-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

adverse modification violates section 7(a)(2) of the ESA, 16 U.S.C. § 1536(a)(2), and is arbitrary, capricious, and not in accordance with law, 5 U.S.C. § 706(2)(A)").  This Court has similarly recognized that Plaintiffs' Complaint "alleg[es] that EPA had not taken any steps to implement the Reasonable and Prudent Alternatives ("RPAs") and the Reasonable and Prudent Measures ("RPMs") articulated in the BiOps, nor taken any alternative protective measures….").  Order Granting Motions to Stay at 3 (Jun 30, 2011) (emphasis added).

It is not "too vague," Br. at 11, to assert that EPA failed to take alternative steps to protect salmonids from these pesticides; in alleging that EPA has failed to act, Plaintiffs are not required to enumerate the universe of alternative actions that EPA hypothetically might have taken but has not. It is difficult to imagine—and Intervenors tellingly provide no hint—what additional facts would be necessary to establish EPA's failure to comply with Section 7.  See Browne v. Avvo Inc., 525 F. Supp. 2d 1249, 1251 (W.D. Wash. 2007) (denying 12(b)(6) motion because defendants "made no attempt to identify any particular deficiency in plaintiffs' allegations" other than claim that complaint failed to meet Twombly standard).

Because these facts, if true, are sufficient to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," Iqbal, 556 U.S. at 678, the Court should deny Intervenors' request to dismiss Plaintiffs' First Claim for Relief under Rule 12(b)(6).

III.    PLAINTIFFS HAVE ADEQUATELY PLED THEIR ESA SECTION 9 CLAIM.

Plaintiffs have similarly alleged sufficient facts in support of the claim that EPA is unlawfully taking listed salmonids.  Section 9 of the ESA, 16 U.S.C. § 1538, generally prohibits EPA from taking listed salmonids by directly killing individual salmonids or by significantly modifying or degrading salmonid habitat to the point that salmonid breeding, spawning, rearing, migrating, feeding or sheltering are significantly impaired.  Compl. at ¶ 57.  EPA may take listed salmonids, however, if doing so "complies with the conditions set forth in the ITS."  Ramsey v. Kantor, 96 F.3d 434, 441 (9th Cir. 1996); 16 U.S.C. § 1536(o)(2); Compl. at ¶¶ 31-33.  Take that is

PLAINTIFFS' OPPOSITION TO JOINT MOTION FOR
JUDGMENT ON THE PLEADINGS
(Civ. No. 10-01919-TSZ)   -14-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

not specifically authorized by the ITS is impermissible and illegal.[11]

In this case, EPA has not complied with any of the conditions in the ITS.  Compl. at ¶¶ 47, 62.  Therefore, the ITS does not shield EPA from liability for any take caused by pesticide use according to EPA's current pesticide registrations and applicable labels.[12]  Id. at ¶¶ 31-33, 61-63; 16 U.S.C. § 1536(o)(2).  As detailed in the Complaint, NMFS concluded that EPA's registration of diazinon, malathion, chlorpyrifos, carbaryl, carbofuran, and methomyl is presently taking listed salmonids.  Compl. at ¶¶ 8, 39, 44.  NMFS found that EPA's registration of these pesticides is resulting in take through direct mortality and injury to adults and juveniles, and harm to olfactory sense, impaired growth and feeding, reproductive impairment, and impacts to salmonid prey.  Compl. at ¶¶ 2, 8, 39, 44, 58-59.  Those factual conclusions were based on extensive scientific research, analysis, and observations.

Intervenors, however, take issue with the sufficiency of the factual assertions in the Complaint and argue that it fails to meet the Iqbal-Twombly pleading standard because it contains only "naked assertions devoid of further factual enhancement" and lacks precise specificity.  Br. at 12.  But Iqbal and Twombly do not require that factual allegations be supported by further factual enhancement.  These cases were concerned instead with the problem of "a legal conclusion couched as a factual allegation," 556 U.S. at 678; 550 U.S. at 555-56, and require only that such legal

---

[11] In addition, when an agency does comply with the conditions of an ITS, but the amount of take exceeds that authorized in the ITS, the excess take is illegal.  Or. Natural Desert Ass'n v. Tidwell, 716 F. Supp. 2d 982, 1005 (D. Or. 2010) ("ONDA").  As explained below, because EPA did not comply with any conditions of the ITS, ONDA is inapplicable to this case.  See infra at 18.

[12] Intervenors initially misrepresent Plaintiffs' Section 9 claim as asserting only that EPA has a "duty to implement the RPMs suggested in [the] BiOp."  Br. at 12.  Plaintiffs' Section 9 claim, however, is based in part on the requirement that EPA implement the RPMs (and RPAs) as a condition of coverage from the ITS.  See Compl. at ¶¶ 40, 44.  EPA's failure to do so means that it is ineligible for the safe harbor provided by the ITS for take from its pesticide registrations and is therefore liable for any and all take that results from those registrations.  See Bennett, 520 U.S. at 170.  The facts supporting the allegations of take (harm and death to salmon and steelhead) caused by EPA's pesticide registrations are detailed in the Complaint and reviewed below.

PLAINTIFFS' OPPOSITION TO JOINT MOTION FOR
JUDGMENT ON THE PLEADINGS
(Civ. No. 10-01919-TSZ)   -15-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

conclusions be supported by some factual enhancement.  Id.  See also Iqbal, 556 U.S. at 678 (clarifying that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").  As the Court specifically stated in Twombly, 550 U.S. at 556, plaintiffs must allege only "enough fact to raise a reasonable expectation that discovery will reveal evidence of" the violation alleged.

Plaintiffs easily meet that requirement here.  The assertion that use of the six pesticides at issue causes "direct mortality and injury to adults and juveniles, and harm to olfactory (homing) sense, impaired growth and feeding, reproductive impairment and impacts to salmonids prey," Compl. at ¶¶ 8, 39, 44, is a factual statement; it is not "a legal conclusion couched as a factual allegation," Iqbal, 556 U.S. at 678.  Intervenors' criticism that "[t]he Complaint does not even identify any of the 27 species or address exactly how each is being harmed by one or more of the six covered products," Br. at 12, is flawed for the same reason: Twombly and Iqbal do not require such a fine degree of specificity in the factual pleadings.  See Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555) ("the pleading standard Rule 8 announces does not require 'detailed factual allegations'").  Rather than separately listing each species and detailing every way in which they are being harmed, the Complaint is based on and cites to the analysis of harm detailed in the BiOps. See Compl. at ¶¶ 6-9, 37-45.

To require the detail requested by Intervenors would result in a needlessly lengthy complaint that reiterates the extensive factual findings in the BiOps.  To the extent that further factual enhancement is required at the pleadings stage to indicate that take is plausibly occurring, the Court may look to the BiOps to verify or seek additional detail about the facts alleged in the Complaint. Keithly, 764 F. Supp. 2d at 1261 (The Court may "consider documents referenced extensively in the complaint, documents that form the basis of plaintiffs' claim, and matters of judicial notice when determining whether the allegations of the complaint state a claim upon which relief can be granted").  See also United States v. Ritchie, 342 F.3d 903, 908-09 (9th Cir. 2003).  Intervenors

PLAINTIFFS' OPPOSITION TO JOINT MOTION FOR
JUDGMENT ON THE PLEADINGS
(Civ. No. 10-01919-TSZ)   -16-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

would impermissibly demand that Plaintiffs' Complaint "include the facts necessary to carry the plaintiff's [evidentiary] burden [at trial], or detailed factual allegations." Opel, 2012 WL 1441405, at *3. The facts in the Complaint are more than sufficient to meet the Iqbal-Twombly standards— they offer precisely the factual allegations which, accepted as true, provide a plausible basis and "raise a reasonable expectation" for the claim that EPA is illegally taking salmonids.[13]

Intervenors implicitly acknowledge that the BiOps contain sufficient facts to support a plausible claim that EPA is taking listed salmonids by alleging that Plaintiffs cannot rely on the facts presented in the BiOps to allege that take is occurring. See Br. at 12. But it is in no way improper for Plaintiffs to rely on NMFS's extensive analysis of the effects of these six pesticides and the harm they are inflicting on listed salmonids as evidence of take. Intervenors' argument to the contrary is beside the point—they merely assert that EPA is not required to comply with the RPMs or other terms in the BiOps, which is true as far as it goes (though it leaves EPA liable for *all* take that is occurring, Bennett, 520 U.S. at 170). The fact that EPA ignores RPMs and other terms at its peril, however, does nothing to diminish the factual value of NMFS's well-supported conclusion that take is occurring. Indeed, even at the summary judgment phase, this Court has held that the factual conclusions in a *draft* biological opinion are acceptable evidence that take is occurring. See Swinomish Indian Tribal Cmty. v. Skagit Cnty. Dike Dist. No. 22, 618 F. Supp. 2d 1262, 1271 (W.D. Wash. 2008) (finding that facts presented in draft BiOp constituted "substantial evidence from which the court can conclude that the District's Dry Slough tidegate replacement led to a 'take' of chinook salmon."). Where this Court has already found that facts in a draft BiOp were sufficient to carry a factual burden in ruling on summary judgment, Intervenors have offered no

---

[13] Intervenors appear to urge application of a summary judgment evidentiary standard by insisting that Plaintiffs' "'take' claims against a federal agency must be proven on the merits by extrinsic evidence." Br. at 12. But this is not the standard applicable to 12(b)(6) motions. Twombly "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal [the necessary] evidence…." 550 U.S. at 556.

PLAINTIFFS' OPPOSITION TO JOINT MOTION FOR
JUDGMENT ON THE PLEADINGS
(Civ. No. 10-01919-TSZ)   -17-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

plausible reason that the facts in these BiOps are insufficient to support the allegations that take is occurring at the pleadings stage.

Intervenors cite ONDA, 716 F. Supp. 2d at 1006, for the proposition that a BiOp cannot be used to provide evidence of take.  Br. at 12.  However, ONDA does not stand for that proposition, nor is that case relevant here.  ONDA merely holds that exceeding the conditions of an ITS does not, standing alone, constitute evidence of take; nowhere does that case hold that factual findings in a BiOp are somehow inadmissible or irrelevant.  ONDA, 716 F. Supp. 2d at 1005 ("the exceedance of the ITS in and of itself does not establish a violation of § 9.  Rather, the exceedance of the ITS abrogates the safe harbor provision of the ITS, but plaintiffs must still demonstrate that take has occurred.").[14]  Here, because EPA is not protected by an ITS, any take is illegal.  As Plaintiffs alleged in the Complaint, NMFS—the expert agency charged by the statute to make such determinations—found in its BiOps that current pesticide uses in accordance with EPA's registrations harm and kill salmon and steelhead.  EPA has done nothing to alter those conclusions or to otherwise seek permission for any portion of the take that is occurring.[15]  Plaintiffs have properly plead and relied on this evidence to support the allegation that take is occurring and unless and until EPA complies with the ITSs in both BiOps and/or alters the current use of these pesticides

---

[14] ONDA dealt with a motion for summary judgment, where the evidentiary standard is higher than that in the pleadings stage.  The plaintiffs in ONDA were required to "prove by a preponderance of the evidence that the grazing authorized by the Forest Service . . . resulted in the take of one or more . . . steelhead."  716 F. Supp. 2d at 1005.  The same standard does not apply in a judgment on the pleadings.

[15] Moreover, NMFS's analysis and conclusions regarding diazinon, malathion, and chlorpyrifos have already been found lawful.  Dow AgroSciences LLC v. Nat'l Marine Fisheries Serv., 821 F. Supp. 2d 792, 796 (D. Md. 2011).  The doctrine of res judicata bars Dow—and likely CropLife because it is in privity with Dow—from collaterally challenging or disputing NMFS's analysis and conclusions regarding take, jeopardy, or adverse modification of critical habitat in that BiOp.  See Southern Pacific R. Co. v. U.S., 168 U.S. 1, 48-49 (1897) (a "right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be disputed in a subsequent suit between the same parties or their privies . . . .")  See also Fund for Animals v. Lujan, 962 F.2d 1391, 1398 (9th Cir. 1992) (res judicata extends to bar "the assertion of any theory of recovery that could have been asserted in the first action.").

PLAINTIFFS' OPPOSITION TO JOINT MOTION FOR
JUDGMENT ON THE PLEADINGS
(Civ. No. 10-01919-TSZ)   -18-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

1  to stop all take, it is liable for that take.

2      Plaintiffs have pled all the facts necessary to establish "plausible grounds to infer the

3  existence of a claim for relief" on their claim that EPA has violated Section 9 of the ESA.  al-Kidd

4  v. Ashcroft, 580 F.3d at 977.  The Court should reject Intervenors' attempt to require Plaintiffs to

5  provide facts sufficient to prove their Section 9 claims at the pleading stage and deny their request to

6  dismiss Plaintiffs' Second Claim for Relief.

7                              CONCLUSION

8      For all of the foregoing reasons, the Court should deny the Intervenors' last-minute motion

9  for judgment on the pleadings and allow the parties to proceed to briefing motions for summary

10 judgment in accordance with the schedule established in this Court's July 26, 2012 Order.

11     Respectfully submitted this 27th day of August, 2012.

12

13

14              s/ Amanda W. Goodin
                STEPHEN D. MASHUDA (WSB #36968)
15              AMANDA W. GOODIN (WSB #41312)
                Earthjustice
16              705 Second Avenue, Suite 203
                Seattle, WA  98104
17              (206) 343-7340 | Phone
                (206) 343-1526 | Fax
18              smashuda@earthjustice.org
                agoodin@earthjustice.org
19
                *Attorneys for Plaintiffs, Northwest Center for*
20              *Alternatives to Pesticides, Pacific Coast Federation*
                *of Fishermen's Associations, Institute for*
21              *Fisheries Resources, Defenders of Wildlife, Joel*
                *Kawahara, and Edward Deryckx*
22

23

24

25

26

27 PLAINTIFFS' OPPOSITION TO JOINT MOTION FOR              *Earthjustice*
   JUDGMENT ON THE PLEADINGS                                *705 Second Ave., Suite 203*
28 (Civ. No. 10-01919-TSZ)   -19-                          *Seattle, WA  98104*
                                                            *(206) 343-7340*

CERTIFICATE OF SERVICE

I am a citizen of the United States and a resident of the State of Washington.  I am over 18 years of age and not a party to this action.  My business address is 705 Second Avenue, Suite 203, Seattle, Washington 98104.

I HEREBY CERTIFY that on August 27, 2012, I electronically filed the following documents:

1.      Plaintiffs' Opposition to Joint Motion for Judgment on the Pleadings;
2.      Declaration of Matthew Ramsey; and
3.      Declaration of Glen H. Spain.

with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Meredith L. Flax
J. Brett Grosko
U.S. Department of Justice
Environment and Natural Resources Division
Wildlife and Marine Resources Section
Benjamin Franklin Station, P.O. Box 7369
Washington, D.C.  20044-7369
**Street Address**:
601 D Street, N.W., Room 3712
Washington, D.C.  20004
(202) 305-0404 | Phone (Meredith)
(202) 305-0342 | Phone (Brett)
(202) 305-0275 | Fax
meredith.flax@usdoj.gov
brett.grosko@usdoj.gov
*Attorney for Federal Defendants*

☐ via facsimile
☐ via overnight mail
☐ via first-class U.S. mail
☐ via hand delivery
☒ via Court ECF system
☐ via email

CERTIFICATE OF SERVICE   -1-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

| | |
|---|---|
| 1  J. Michael Klise | ☐ via facsimile |
| Steven P. Quarles | ☐ via overnight mail |
| 2  Crowell & Moring LLP | ☐ via first-class U.S. mail |
| 1001 Pennsylvania Avenue, N.W. | ☐ via hand delivery |
| 3  Washington, D.C.  20004-2595 | ☒ via Court ECF system |
| (202) 624-2629 | Phone | ☐ via email |
| 4  (202) 624-2665 | Phone | |
| (202) 628-5116 | Fax | |
| 5  jmklise@crowell.com | |
| 6  squarles@crowell.com | |

1  J. Michael Klise
Steven P. Quarles
2  Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
3  Washington, D.C.  20004-2595
(202) 624-2629 | Phone
4  (202) 624-2665 | Phone
(202) 628-5116 | Fax
5  jmklise@crowell.com
6  squarles@crowell.com
7  *Attorney for Intervenor-Defendant CropLife America, RISE, Oregonians for Food and Shelter, and Washington Friends of Farms and Forests*

☐ via facsimile
☐ via overnight mail
☐ via first-class U.S. mail
☐ via hand delivery
☒ via Court ECF system
☐ via email

8
9  Zachary R. Hiatt
Graham & Dunn PC
10  Pier 70, 2801 Alaskan Way, Suite 300
Seattle, WA  98121-1128
11  (206) 624-8300 | Phone
(206) 340-9599 | Fax
12  zhiatt@grahamdunn.com
*Attorney for Intervenor-Defendant CropLife America, RISE,*
13  *Oregonians for Food and Shelter, and Washington Friends of Farms and Forests*

☐ via facsimile
☐ via overnight mail
☐ via first-class U.S. mail
☐ via hand delivery
☒ via Court ECF system
☐ via email

14
15  Roy A. Umlauf
Kenneth M. Roessler
16  Forsberg & Umlauf, P.S.
901 Fifth Avenue, Suite 1400
17  Seattle, WA  98164-2050
(206) 689-8500 | Phone
18  (206) 689-8501 | Fax
rumlauf@forsberg-umlauf.com
19  kroessler@forsberg-umlauf.com
*Attorneys for Intervenor-Defendant Dow AgroSciences LLC*

☐ via facsimile
☐ via overnight mail
☐ via first-class U.S. mail
☐ via hand delivery
☒ via Court ECF system
☐ via email

20
21  David B. Weinberg
Eric Andreas
22  Wiley Rein LLP
1776 K Street, N.W.
23  Washington, D.C.  20006
(202) 719-7000 | Phone
24  (202) 719-7049 | Fax
dweinberg@wileyrein.com
25  eandreas@wileyrein.com
*Attorneys for Intervenor-Defendant Dow AgroSciences LLC*

☐ via facsimile
☐ via overnight mail
☐ via first-class U.S. mail
☐ via hand delivery
☒ via Court ECF system
☐ via email

26
27
28  CERTIFICATE OF SERVICE   -2-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

Samuel W. Plauché
Amanda M. Stock
Plauché & Stock LLP
811 First Avenue, Suite 630
Seattle, WA  98104
(206) 588-4188 | Phone
billy@plauchestock.com
amanda@plauchestock.com
*Attorneys for Intervenor-Defendant Willapa/Grays Harbor Oyster*
*Growers Association*

☐ via facsimile
☐ via overnight mail
☐ via first-class U.S. mail
☐ via hand delivery
☒ via Court ECF system
☐ via email

AND I FURTHER CERTIFY that I have mailed by United States Postal Service the

documents to the following non-CM/ECF participants:

None

I, Catherine Hamborg, declare under penalty of perjury that the foregoing is true and correct.

Executed this 27th day of August, 2012, at Seattle, Washington.

Catherine Hamborg

CERTIFICATE OF SERVICE   -3-