1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

NORTHWEST COALITION FOR
ALTERNATIVES TO PESTICIDES,
et al.,

            Plaintiffs,

      v.

UNITED STATES
ENVIRONMENTAL PROTECTION
AGENCY, et al.,

            Defendants,

      v.

CROPLIFE AMERICA, et. al,

            Intervenor Defendants.

C10-1919 TSZ

ORDER

       THIS MATTER comes before the ourt on Intervenor Defendants' motion for

judgment on the pleadings based on Rule 12(c), docket no. 80.  Federal Defendant EPA

joins in the motion in part, only with respect to the issue of standing, docket no. 84.

Having reviewed all papers filed in support of, and in opposition to, the pending motion,

the Court enters the following Order.

ORDER - 1

## I.     __Background__

This case arises from litigation that occurred between 2001 and 2006 in

Washington Toxics Coalition v. EPA, No. 01-cv-132C.  On July 2, 2002, the Court found

the Environmental Protection Agency ("EPA") in violation of Section 7(a)(2) of the

Endangered Species Act ("ESA") for failure to consult with the National Marine

Fisheries Service ("NMFS") to ensure that 54 registered pesticides would not jeopardize

ESA listed salmon and steelhead species (collectively "salmonid").  Washington Toxics

Coalition v. EPA, No. 01-cv-132C, Order at 20 (W.D. Wash. July 2, 2002), aff'd, 413

F.3d 1024 (9th Cir. 2005) (hereinafter "Washington Toxics I").  In a separate Order, the

Court granted injunctive relief prohibiting certain uses of those 54 pesticides to protect

salmonids while the consultation process with NMFS proceeded.  Washington Toxics

Coalition v. EPA, No. 01-cv-132C, Order at 4-10 (W.D. Wash. Jan. 22, 2004), aff'd 413

F.3d 1024 (9th Cir. 2005) (hereinafter "Washington Toxics II").  One of the interim

protective measures ordered by the Court was the implementation of buffer zones of 20

yards for ground application and 100 yards for aerial application of the listed pesticides,

with certain exceptions.  Id. at 4-5.  The Order provided that the injunction would

terminate automatically upon the occurrence of one of several events, including "[t]he

issuance by NMFS of a biological opinion."  Id. at 12.

In 2007, after being sued by the Northwest Coalition for Alternatives to Pesticides

("NCAP"), Pacific Coast Federation of Fisherman's Associations ("PCFFA"), and others

for failure to complete the required consultations, NMFS entered into a consent decree

agreeing to issue biological opinions ("BiOps") on 37 of the pesticides that EPA

1   determined "may affect" listed salmonids by a date certain.  NCAP v. NMFS, No. 07-cv-

2   1791, Stipulated Settlement Agreement and Order of Dismissal (August 1, 2008).  On

3   November 18, 2008, NMFS issued the first BiOp, concluding that the continued use of

4   the organophosphate pesticides diazinon, malathion, and chlorpyrifos jeopardize the

5   existence of 27 species of salmon and steelhead and will likely destroy or adversely

6   modify the critical habitat for 25 of those species (hereinafter the "OP BiOp").  OP BiOp

7   at 391.  On April 20, 2009, NMFS issued the second biological opinion concluding that

8   EPA's registration of pesticide products containing carbaryl and carbofuran jeopardize 22

9   listed Pacific salmonids and will likely destroy or adversely modify the habitat of at least

10  20 listed Pacific salmonids (hereinafter the "Carbamate BiOp").  Carbamate BiOp at 481-

11  82.  NMFS also found that pesticide products containing methomyl jeopardize 18 listed

12  Pacific salmonids and likely destroy or adversely modify the habitat of at least 16 Pacific

13  salmonids.  Id. at 482-84.  The interim protective measures ordered in 2004, including the

14  buffer restrictions, terminated with respect to the six pesticides at issue here when NMFS

15  issued the OP and Carbamate BiOps.  Washington Toxics II, No. 01-cv-132, Order at 12

16  (W.D. Wash. Jan. 22, 2004) (indicating "the issuance by NMFS of a biological opinion"

17  is a terminating event).

18          This action is a result of EPA's failure to implement the OP BiOp and Carbamate

19  BiOP in a timely manner.  On November 29, 2010, alleging that EPA had not taken any

20  steps to implement the Reasonable and Prudent Alternatives ("RPAs") and the

21  Reasonable and Prudent Measures ("RPMs") articulated in the BiOps, or implemented

22  any alternative protective measures, Plaintiffs brought this action under the ESA citizen-

23

ORDER - 3

1    suit provision seeking to enjoin EPA's authorization of the use of diazinon, malathion,

2    chlorpyrifos, carbaryl, carbofuran, and methomyl.  Amended Complaint at ¶¶ 10, 11.

3    Dow AgroSciences LLC, CropLife America, and other groups representing pesticide

4    manufacturers intervened on behalf of EPA (collectively "Intervenors").[1]

5          Pursuant to Rule 12(c), Intervenors now move to dismiss the complaint on two

6    grounds.  First, they argue that Plaintiffs have not pled facts sufficient to support

7    constitutional standing under Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61

8    (1992).  Second, they argue that Plaintiffs have failed to allege facts sufficient to support

9    a claim for relief that is plausible on its face under Bell Atl. Corp. v. Twombly, 550 U.S.

10    544 (2007), and Aschcroft v. Iqbal, 556 U.S. 662 (2009).

11    **II.    Standard**

12          A motion for judgment on the pleadings under Rule 12(c) is decided under the

13    same standard as a motion to dismiss under Rule 12(b)(6).  McGlinchy v. Shell Chem.,

14    845 F.2d 801, 810 (9th Cir. 1988).  Under Rule 12(b)(6), the Court may dismiss a

15    complaint for failure to state a claim upon which relief can be granted.  In ruling on a

16    motion to dismiss, the Court must construe the complaint in the light most favorable to

17    the non-moving party.  Livid Holdings Ltd. v. Salomon Smith Barney, Inc., 416 F.3d

18    940, 946 (9th Cir. 2005).  The Court must accept all well-pleaded allegations of material

19

---

20    [1] Prior to the commencement of this case, Croplife America, Dow AgroSciences and other groups

21    representing pesticide registrants filed suit against NMFS in the U.S. District Court for the District of Maryland alleging that the OP BiOp was flawed.  Dow AgroSciences LLC v. Nat'l Marine Fisheries Service, 638 F. Supp. 2d 508 (D. Md. 2009).  On October 31, 2011, the District of Maryland issued its

22    opinion concluding that the OP BiOp was not flawed.  Dow AgroSciences LLC v. Nat'l Marine Fisheries Service, 821 F. Supp. 2d 792, 810-11 (D. Md. 2011), review accepted, no. 11-2337 (4th Cir. 2011).

23

1  fact as true and draw all reasonable inferences in favor of the plaintiff.  <u>Wyler Summit</u>

2  <u>P'ship v. Turner Broad. Sys.</u>, 135 F.3d 658, 661 (9th Cir. 1998).

3      Dismissal is appropriate where a complaint fails to allege "enough facts to state a

4  claim to relief that is plausible on its face."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544,

5  570 (2007).  A claim is plausible on its face "when the plaintiff pleads factual content

6  that allows the court to draw the reasonable inference that the defendant is liable for the

7  misconduct alleged."  <u>Aschcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).  As a result, a

8  complaint must contain "more than labels and conclusions, and a formulaic recitation of

9  the elements of a cause of action will not do."  <u>Twombly</u>, 550 U.S. at 555.

10     In ruling on a Rule 12(b)(6) motion to dismiss, the court must treat the motion as a

11  motion for summary judgment under Rule 56 if either party to the motion submits

12  materials outside the pleadings in support or opposition to the motion, and if the district

13  court relies on those materials.  Fed. R. Civ. P. 12(b)(6); <u>Jackson v. Southern California</u>

14  <u>Gas Co.</u>, 881 F.2d 638, 643 n.4 (9th Cir. 1989) ("The proper inquiry is whether the court

15  relied on the extraneous matter.").  However, a court may consider material which is

16  properly submitted as part of the complaint on a motion to dismiss without converting it

17  into a motion for summary judgment.  <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 688 (9th

18  Cir. 2001). Where the documents are not physically attached to the complaint, they may

19  be considered if the documents' "authenticity . . . is not contested" and "the plaintiff's

20  complaint necessarily relies" on them."  <u>Parrino v. FHP, Inc.</u>, 146 F.3d 699, 705-06 (9th

21  Cir. 1998).  Further, pursuant to Fed. R. Evid. 201, a court may take judicial notice of

22  "matters of public record" without converting a motion to dismiss into a motion for

23

ORDER - 5

1  summary judgment.  Mack v. South Bay Beer Distrib., Inc., 798 F.2d 1279, 1282 (9th

2  Cir. 1986).  A court may not, however, take judicial notice of a fact that is subject to

3  reasonable dispute.  Fed. R. Evid. 201(b).

4      **III.**   **Standing**

5         Since the standing requirement is not a pleading requirement, but rather an

6  indispensable part of the plaintiff's case, "each element must be supported in the same

7  way as any other matter on which the plaintiff bears the burden of proof."  Lujan, 504

8  U.S. at 561.  "At the pleading stage, general factual allegations of injury resulting from

9  the defendant's conduct may suffice, for on a motion to dismiss we presume that general

10  allegations embrace those specific facts that are necessary to support the claim."  Id.; see

11  also Churchill County v. Babbitt, 150 F.3d 1072, 1077 (9th Cir. 1998).

12         However, the Court notes at the outset that the issue of "injury" for purposes of the

13  standing analysis is distinct from the issue of whether Plaintiffs have pled sufficient facts

14  to support a cause of action under Fed. R. Civ. Pro. 12(b)(6).  "The threshold question of

15  whether [Plaintiffs have] standing (and the [C]ourt has jurisdiction) is distinct from the

16  merits of [Plaintiffs'] claim."  Maya v. Centex Corp., 658 F.3d 1060, 1068 (9th Cir.

17  2011).  Standing "in no way depends on the merits of the plaintiff's contention that

18  particular conduct is illegal."  Warth v. Seldin, 422 U.S. 490, 500 (1975); accord Equity

19  Lifestyle Props., Inc. v. Cnty. of San Luis Obispo, 548 F.3d 1184, 1189 n.10 (9th Cir

20  2008) ("The jurisdictional question of standing precedes, and does not require, analysis of

21  the merits.").  This has led the Ninth Circuit to note that Twombly and Iqbal deal with a

22

23

1   fundamentally different issue [than standing], and the court's focus should be on the

2   jurisprudence that deals with constitutional standing." Maya, 658 F.3d at 1068.

3        Intervenors, joined by the EPA,[2] argue that "plaintiffs fail to allege facts sufficient

4   to establish standing." Motion at 5 (dockt no. 80). In order to bring a citizen suit under

5   the ESA, plaintiffs must satisfy both statutory and constitutional standing requirements.

6   Washington Toxics I, No. 01-cv-132, Order at 11. Here, Defendants do not challenge

7   Plaintiffs' statutory standing, and Plaintiffs' asserted interest in protecting threatened and

8   endangered salmonid species is sufficient to support standing under 16 U.S.C. §

9   1540(g)(1).

10       In order to have constitutional standing to bring a case, a plaintiff must show three

11  elements.

12           First, the plaintiff must have suffered an "injury in fact"—an invasion of a
             legally protected interest which is (a) concrete and particularized and (b)
13           actual or imminent, not conjectural or hypothetical. Second, there must be
             a causal connection between the injury and the conduct complained of—the
14           injury has to be fairly traceable to the challenged action of the defendant,
             and not the result of the independent action of some third party not before
15           the court. Third, it must be likely, as opposed to merely speculative, that
             the injury will be redressed by a favorable decision.

16
17  Lujan, 504 U.S. at 560-61 (internal citations and quotations omitted); Central Delta

    Water Agency v. United States, 306 F.3d 938, 946-47 (9th Cir. 2002). Intervenors
18
    challenge Plaintiffs' standing with respect to all three elements. Because Plaintiffs are
19

20  _____

21  [2] The EPA submitted a one page response to the Intervenor Defendants' motion to dismiss, joining in the
    motion only with respect to the standing argument. EPA Response, docket no. 84.

22       .

23

ORDER - 7

1   organizations, they must demonstrate that their members meet the standing test.

2   Defenders of Wildlife v. EPA, 420 F.3d 946, 956 (9th Cir. 2005).

3   **A. Injury in Fact**

4   Plaintiffs allege that any injury to threatened and endangered Pacific salmonid

5   species results in impairment of their interests.  For example, Plaintiff NCAP alleges that

6   it has 1,900 members, "many of whom use the waters of California, Oregon, and

7   Washington for recreational, commercial, and aesthetic pursuits including salmonid

8   fishing, boating, and wildlife photography."  Amended Complaint at ¶ 12.  Plaintiff

9   PCFFA asserts that many of its "members derive all or part of their income from the

10  harvesting of Pacific salmonids."  Id. at ¶ 13.  Individual Plaintiffs Joel Kawahara and

11  Edward Deryckx also allege that injury to listed Pacific salmonids directly impairs their

12  interests.  Mr. Kawahara is a commercial fisherman and "derives commercial and

13  aesthetic benefits from salmonids in the waters of the Pacific Northwest."  Id. at ¶ 16.

14  Mr. Deryckx is a farmer in the Skagit Valley who uses salmon bearing waters for

15  "aesthetic and recreational purposes including fishing, hiking, and boating."

16  In Washington Toxics Coalition v. US Dept. of Interior and Fish and Wildlife

17  Service, a case involving similar parties and issues, the court concluded that plaintiffs had

18  demonstrated an injury in fact based on substantially identical allegations.

19      Here, Plaintiffs' members "use the waters of Washington for recreation,
        fishing, and aesthetic pursuits," "engage in and obtain great enjoyment and
20      benefit from observing, studying, and photographing wildlife, including
        threatened and endangered species," and "depend on fish as a natural
21      resource and, until recent fisheries closures . . . generated hundreds of
        millions of dollars in personal income to the [Pacific] region through
22      commercial fishing," among other things.  These allegations regarding

23

ORDER - 8

> Plaintiffs' enjoyment of and interest in listed species "meet the criteria for demonstrating an adequate injury in an environmental case."

457 F. Supp. 2d 1158, 1168 (W.D. Wash. 2006) (citing Defenders of Wildlife, 420 F.3d at 957). Intervenors have made no argument attempting to distinguish the facts of this case from that opinion. Plaintiffs' allegations concerning their interest in salmonids "meet the criteria for demonstrating an adequate injury in an environmental case." Id.[3]

EPA argues in its Response joining the Intervenors' motion that "Plaintiffs have failed to make any allegations concerning their purported interest in any of the particular salmonid Evolutionarily Significant Units (ESU's) [and failed to] alleged the existence of a nexus between their purported interest in those ESUs and harm resulting from the application any of the six pesticides at issue in the BiOps." EPA's Response at 2 (docket no. 84). This argument rings hollow when the Amended Complaint is read in conjunction with the BiOps.

In ruling on a motion to dismiss, the Court may consider the complaint as well as (1) documents referenced in the pleadings and central to plaintiffs' claims, (2) matters of which a court may properly take notice, and (3) public documents. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 127 S.Ct. 2499, 2509, 168 L.Ed.2d 179 (2007). When standing is called into question, a court may consider matters outside of the pleadings. Cleveland Branch, NAACP v. City of Parma, 263 F.3d 513, 524 (6th Cir. 2001).

---

[3] Plaintiffs have submitted two additional declarations supporting standing with their Response. The Court concludes that it is unnecessary to consider the Declarations of Matthew Ramsey and Glen Spain, docket nos. 82, 83.

ORDER - 9

1    Here, the Plaintiffs repeatedly refer to and rely upon, the OP BiOp and Carbamate

2    BiOp in the Amended Complaint.  See Amended Complaint at ¶¶ 7-9.  As such, the Court

3    has considered those documents in ruling on the motions to dismiss.  When the Amended

4    Complaint and the BiOps are read together, it is clear that Plaintiffs are alleging an

5    interest in the salmonid Evolutionarily Significant Units (ESU's) that are addressed in the

6    BiOps.  Moreover, it is clear that Plaintiffs' are relying, in part, on the analysis in the

7    BiOps to demonstrate injury.  "EPA's failure to implement the RPAs in NMFS's OP and

8    Carbamate BiOps results in inadequate mitigation of pesticide uses and harms these

9    individuals' and members' past, present, and future enjoyment of salmonids and

10   salmonid habitat."  Amended Complaint at 18.

11   **B.  Causation**

12   EPA has a duty to regulate pesticides under FIFRA.  7 U.S.C. 136(a)(a).  Plaintiffs

13   have alleged in their Complaint that the currently authorized uses of the six pesticides at

14   issue in this case harm threatened and endangered salmonid species by causing death,

15   adversely affecting salmonid food supplies and habitat, and impairing salmonid

16   swimming, predator avoidance, and reproduction.   Amended Complaint at 2.  These

17   allegations are supported in detail by the OP BiOp and Carbamate BiOp issued by NMFS

18   and incorporated by reference in the amended complaint, including the incidental take

19   statement ("ITS") in each BiOp.  See OP BiOp at 398-99 ("In some cases fish may die,

20   be injured, or suffer sublethal effects. . . . Therefore, incidental take of listed salmonids is

21   reasonably certain to occur over the 15-year duration of the proposed action.");

22   Carbamate BiOp at 496-97 (same).  Plaintiffs allege that failure to implement the BiOps

23

ORDER - 10

1  or take other alternative measures to avoid jeopardy and mitigate adverse modification of

2  critical habitat resulting from currently authorized uses of the pesticides violates Sections

3  7(a)(2) and Section 9 of the ESA.

4        Over a decade ago, this Court concluded that EPA's administration of the Federal

5  Insecticide, Fungicide and Rodenticide Act ("FIFRA") without consultation with NMFS

6  with respect to the impact of pesticide registrations on threatened and endangered

7  salmonids violated Section 7(a)(2) of the ESA.  Washington Toxics I, No. 01-cv-132 at

8  21.  The Court thereafter, ordered injunctive relief in the nature of restrictions on

9  pesticide use and application pending consultation with NMFS.  Washington Toxics II,

10  No. 01-cv-132.

11        Over three years ago, NMFS issued its biological opinions on the FIFRA

12  registrations of the six pesticides at issue in this case, concluding that the currently

13  authorized uses of those pesticides result in jeopardy, adverse modification, and take of

14  threatened and endangered salmonid.  To date, EPA has not implemented any of the

15  RPAs or RPMs in the OP and Carbamate BiOps or otherwise implemented alternative

16  protective measures.  Moreover, the injunctive relief ordered in Washington Toxics

17  expired with the issuance of the BiOps.  Washington Toxis II, No. 01-cv-132C, Order at

18  12.

19        The Court concludes that Plaintiffs have pled sufficient facts to support causation.

20  Essentially, Plaintiffs allege that EPA has failed to ensure that the pesticide registrations

21  and labels governing the use of these six pesticides comply with its obligation under the

22

23

ORDER - 11

1    ESA to avoid jeopardy, adverse modification, and take of listed salmonids.  Amended

2    Complaint at ¶¶ 3, 10, 11, 18, 47, 54.

3        C. **Redressability**

4        Intervenor Defendants argue that Plaintiffs have made "no allegations with

5    respect to redressability."  However, the Plaintiffs have requested that this Court remedy

6    the ongoing ESA violations through declaratory and injunctive relief.  See Amended

7    Complaint at 19 (seeking that the Court "[e]njoin, vacate, and set aside EPA's

8    authorization of any use of diazinon, malathion, chlorpyrifos, carbofuran, and methomyl

9    that does not comply with the RPAs and RPMs until such time as EPA has put in place

10   adequate permanent measures to ensure against jeopardy to listed salmon and steelhead

11   or adverse modification of their critical habitat and has complied with the terms and

12   conditions of the incidental take statements.").  The only relevant question with respect to

13   redressability is whether the court "posses the ability to remedy the harm that the

14   petitioner asserts."  Nat'l Wildlife Fed'n v. FEMA, 345 F. Supp. 2d 1151, 1165 (W.D.

15   Wash. 2004).  Here, there is no question that, if the Court finds a violation of the ESA, it

16   may issue appropriate relief.  Greenpeace v. NMFS, 80 F. Supp. 2d 1137, 1151 (W.D.

17   Wash. 2000) ("A substantive or procedural violation of the ESA gives rise to a legally

18   redressable injury.").

19       Intervenors heavy reliance on Chapman v. Pier 1 Imps. (U.S.), Inc., 631 F.3d 939,

20   955 (9th Cir. 2011) is misplaced.  That case does not support Intervenors' motion to

21   dismiss.  In Chapman, the court declined to find standing based on a "list of barriers

22   incorporated into [the] complaint."  Id. at 995.  Intervenors argue that Plaintiffs'

23

ORDER - 12

1   complaint suffers from the same flaw as Chapman's because the bare allegation that

2   Plaintiffs use salmon supporting waters for fishing and recreation does not demonstrate

3   specifically how EPA's inaction impairs those interests.  In contrast to <u>Chapman</u>,

4   however, in this case Plaintiffs have outlined in their complaint how pesticides harm

5   salmonids, their interests in salmonids, and that the continued registration by EPA of the

6   six pesticides at issue will injure Plaintiffs' continued use and enjoyment of the listed fish

7   for recreational and commercial purposes.  Amended Complaint at ¶¶ 2, 6-8, 12-18, 47,

8   54.  This is sufficient to support standing in a case brought under the ESA.

9        **IV.**    <u>**Section 7 Analysis**</u>

10        Plaintiffs allege that EPA "has failed to insure that its pesticide registrations are

11   not likely to jeopardize listed salmonids or adversely modify their critical habitat" in

12   violation of ESA § 7(a)(2).[4]  Amended Complaint at 17.  Intervenors argue that this claim

13   should be dismissed under Fed. R. Civ. P. 12(c) for failure to state a claim.  Intervenors

14   argue that there is no authority for Plaintiffs' claim that EPA is bound by NMFS

15   suggested RPAs and RPMs because Sections 7(a)(2) and (4) do not mandate compliance

16   with the BiOps, but rather allow federal agencies discretion to determine how to carry out

---

[4] 16 U.S.C. § 1536(a)(2) provides:

> Each Federal agency shall, in consultation with and with the assistance of the Secretary, insure that any action authorized, funded, or carried out by such agency (hereinafter in this section referred to as an "agency action") is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of habitat of such species which is determined by the Secretary, after consultation as appropriate with affected States, to be critical, unless such agency has been granted an exemption for such action by the Committee pursuant to subsection (h) of this section. In fulfilling the requirements of this paragraph each agency shall use the best scientific and commercial data available.

1    their actions without jeopardizing the continued existence of threatened or endangered

2    species.  This argument misconstrues Plaintiffs' complaint and the mandate of the ESA.

3        Plaintiffs acknowledge that EPA is not required to implement the RPAs and RPMs

4    after the procedural requirements of consultation are complete.  EPA Response at 11

5    ("After the procedural requirements of consultation are complete, however, the ultimate

6    duty to ensure that pesticide uses will not jeopardize Pacific salmon lies with the EPA.")

7    However, consultation does not relieve EPA of the duty to ensure that the ongoing

8    registration of the pesticides at issue do not result in jeopardy or adverse modification.

9    As the Supreme Court has noted, an agency is technically free to ignore the measures in a

10   BiOp.  Bennett v. Spear, 520 U.S. 154, 170 (1997).  However, an agency that chooses to

11   disregard a BiOp and "proceed with its proposed action . . . does so at its own peril."  Id.;

12   see also Tribal Village of Akutan v. Hodel, 869 F.2d 1185, 1193 (9th Cir. 1988) ("The

13   agency is not required to adopt the alternatives suggested in the biological opinion;

14   however, '[i]f [the Secretary] deviates from them, he does so subject to the risk that he

15   has not satisfied the standard of section 7(a)(2).'" (citing Village of False Pass v. Watt,

16   565 F.Supp. 1123, 1160-61 (D. Alaska 1983), aff'd, 733 F.2d 605 (9th Cir.1984))).

17       Here, Plaintiffs acknowledge that EPA may adopt alternative protective measures

18   in place of NMFS recommendations in the BiOps.  But EPA has thus far failed to

19   implement any protective measures.[5]  Plaintiffs have stated sufficient facts to support

20   their Section 7(a)(2) claim.

21   _____

22   [5] See Answer at 3, 12 (docket no. 47)

23

ORDER - 14

1       V.      **Section 9 Analysis**

2          Plaintiffs allege that EPA "is unlawfully taking listed salmonids" in violation of

3   ESA Section 9.[6]  Amended Complaint at 18.  Intervenors argue that the Court should

4   dismiss this claim under Fed. R. Civ. P. 12(c) because Plaintiffs do not allege sufficient

5   facts to support their claim that a "take" of threatened and endangered salmonid is

6   occurring.

7          The ESA, Section 9, prohibits the taking of listed fish species.  The ESA defines

8   "take" to mean "to harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect,

9   or to attempt to engage in any such conduct."  16 U.S.C. § 1532(19).  Taking is permitted

10  however, if doing so "complies with the conditions set forth in the ITS."  Ramsey v.

11  Kantor, 96 F.3d 434, 441 (9th Cir. 1996); 16 U.S.C. § 1536(o)(2).

12         Here, Plaintiffs allege the following facts to support their Section 9 claim.  NMFS

13  issued two BiOps covering the six pesticides at issue in this case, the OP BiOp and the

14  Carbamate BiOp.  Both BiOps conclude that the currently authorized uses of the

15  pesticides at issue here will result in "take."  Amended Complaint at ¶¶ 8, 39, 44.  Both

16  BiOps include an ITS.  Id. at ¶¶ 40, 44.  EPA has not implemented the BiOps or put in

17

------

18  [6] 16 U.S.C. § 1538(a)(1)(B) provides, in relevant part:

19          Except as provided in sections 1535(g)(2) and 1539 of this title, with respect to any
            endangered species of fish or wildlife listed pursuant to section 1533 of this title it is
20          unlawful for any person subject to the jurisdiction of the United States to—

21          . . . .

22          **(B)** take any such species within the United States or the territorial sea of the United
            States.

23

ORDER - 15

1   place other alternative measures to prevent a "take." Id. at ¶¶ 47, 62.  Therefore, EPA is

2   not protected from liability for any take caused by pesticide use based on current

3   pesticide registrations and labels.  Id. at ¶¶ 31-33, 61-63.[7]

4       A claim is plausible on its face "when the plaintiff pleads factual content that

5   allows the court to draw the reasonable inference that the defendant is liable for the

6   misconduct alleged."  Iqbal, 556 U.S. at 678.  The facts alleged here are "more than

7   labels and conclusions," Twombly, 550 U.S. at 555, and when construed in the light most

8   favorable to Plaintiffs support a claim for relief.

9       Intervenors claim that Plaintiffs must demonstrate actual (past) physical injury to

10  wildlife in order to meet their burden of showing "take" under Section 9.  They cite

11  Babbit v. Sweet Home Chapter of Cmtys. For a Greater Or., 515 U.S. 687, 696-

12  700(1995) and Arizona Cattle Growers' Ass'n v. US Fish and Wildlife, 273 F.3d 1229

13  (9th Cir. 2001) to support their argument.  Neither of these cases are on point.

14      In Sweet Home, parties dependent on the forest product industry brought an action

15  for declaratory relief against the Secretary and the USFWS, facially challenging the

16  Secretary's definition of "harm."  515 U.S. at 691.  The plaintiffs argued that Congress

17

18  _____

19  [7] In their Reply, Intervenors argue that Plaintiffs many not rely on the BiOps to support their claim under
    Iqubal and Twombly.  They argue that Plaintiffs reliance on Keithly v. Intelius Inc., 764 F. Supp. 2d 1257
20  (W.D. Wash. 2011) and U.S. v. Ritchie, 342 F.3d 903 (9th Cir. 2003), to support the proposition that the
    court may look to the BiOps is misplaced.  Intervenors argue that Ritchie is inapposite because it was
    decided prior to Iqubal and Twombly.  But they cite no case authority to support the proposition that
21  Iqubal and Twombly overturned the general proposition that a district court may consider certain
    materials, such as documents attached to the complaint, documents incorporated by reference in the
22  complaint, and matters of judicial notice, on a Rule 12(b)(6) motion to dismiss.  The Court concludes that
    it may properly consider the BiOps as matters incorporated by reference into the Amended Complaint.

23

ORDER - 16

did not intend the word "take" to include habitat modification as the Secretary's "harm" definition provided.  Id.

The Intervenors appear to rely on the following passage to support their argument that Plaintiffs must show "actual physical injury" in order for the Court to find that a taking has occurred.

> Respondents' argument that the Government lacks any incentive to purchase land under § 5 when it can simply prohibit takings under § 9 ignores the practical considerations that attend enforcement of the ESA. Purchasing habitat lands may well cost the Government less in many circumstances than pursuing civil or criminal penalties. In addition, the § 5 procedure allows for protection of habitat before the seller's activity has harmed any endangered animal, *whereas the Government cannot enforce the § 9 prohibition until an animal has actually been killed or injured.*

Id. at 702 (emphasis added).

Intervenors reliance on Sweet Home is misplaced for two reasons.  First, the facts of Sweet Home did not require the Court to address the question of whether a showing of a threat of future harm is sufficient for an injunction.  To the extent the opinion may be read to say past injury is required before an injunction may issue under Section 9, such a statement is dictum.  Second, the remainder of the opinion, and the Ninth Circuit's subsequent interpretation of the opinion, indicate that the Court did not intend to alter case law which holds that an injunction may issue upon a showing of a threat of imminent harm.  See Marbled Murrelet v. Babbit, 83 F.3d 1060, 1065-66 (9th Cir. 1996). In Marbled Murrelet, the Ninth Circuit discussed Sweet Home and concluded that the Court did not intend to disturb case law holding that "[a] reasonably certain threat of

ORDER - 17

imminent harm to a protected species is sufficient for issuance of an injunction under section 9 of the ESA." Id. at 1066.

Arizona Cattle likewise does not support Intervenors argument.  There, an association of cattle ranchers challenged the issuance of an ITS by the FWS that precluded the ranchers from grazing their cattle in certain areas.  273 F.3d at 1233-35. The Court concluded that the FWS had acted in an arbitrary and capricious manner by failing to show that the endangered species in question actually existed on the restricted land. Id. at 1244-45.  That is not an issue here.

Intervenors also claim that Plaintiffs may not rely on NMFS ITS to support a claim that "take" is occurring in violation of ESA Section 9.  The cases that Intervenors cite to support this proposition are inapposite.

Plaintiffs have pled sufficient facts to demonstrate a reasonably certain threat of imminent harm to a protected species.

**VI.   Conclusion**

For the foregoing reasons, the Court DENIES Defendant Intervenor' motion to dismiss.

Dated this 1st day of October, 2012.

THOMAS S. ZILLY
United States District Judge

ORDER - 18