UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NORTHWEST COALITION FOR ALTERNATIVES TO PESTICIDES, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al.,<br><br>Defendants. | C10-1919 TSZ<br><br>ORDER |

THIS MATTER comes before the Court on Federal Defendant's Motion to Limit Review to the Administrative Record, docket no. 101. Intervenor Defendants join in the motion in part, docket no. 105. Having reviewed all papers filed in support of, and in opposition to, the pending motion, the Court enters the following Order.

**I.   Background**

This case arises from litigation that occurred between 2001 and 2006 in Washington Toxics Coalition v. EPA, No. 01-cv-132JCC. On July 2, 2002, the Court found the Environmental Protection Agency ("EPA") in violation of Section 7(a)(2) of

ORDER - 1

1  the Endangered Species Act ("ESA") for failure to consult with the National Marine
2  Fisheries Service ("NMFS") to ensure that 54 registered pesticides would not jeopardize
3  ESA listed salmon and steelhead species (collectively "salmonid").  <u>Washington Toxics</u>
4  <u>Coalition v. EPA</u>, No. 01-cv-132JCC, Order at 20 (W.D. Wash. July 2, 2002), <u>aff'd</u>, 413
5  F.3d 1024 (9th Cir. 2005) (hereinafter "<u>Washington Toxics I</u>").  In a separate Order, the
6  Court granted injunctive relief prohibiting certain uses of those 54 pesticides to protect
7  salmonids while the consultation process with NMFS proceeded.  <u>Washington Toxics</u>
8  <u>Coalition v. EPA</u>, No. 01-cv-132JCC, Order at 4-10 (W.D. Wash. Jan. 22, 2004), <u>aff'd</u>
9  413 F.3d 1024 (9th Cir. 2005) (hereinafter "<u>Washington Toxics II</u>").  One of the interim
10 protective measures ordered by the Court was the implementation of buffer zones of 20
11 yards for ground application and 100 yards for aerial application of the listed pesticides,
12 with certain exceptions.  <u>Id.</u> at 4-5.  The Order provided that the injunction would
13 terminate automatically upon the occurrence of one of several events, including "[t]he
14 issuance by NMFS of a biological opinion."  <u>Id.</u> at 12.
15     In 2007, after being sued by the Northwest Coalition for Alternatives to Pesticides
16 ("NCAP") and others for failure to complete the required consultations, NMFS entered
17 into a consent decree agreeing to issue biological opinions ("BiOps") on 37 of the
18 pesticides that EPA determined "may affect" listed salmonids by a date certain.  <u>NCAP v.</u>
19 <u>NMFS</u>, No. 07-cv-1791RSL, Stipulated Settlement Agreement and Order of Dismissal
20 (August 1, 2008).  On November 18, 2008, NMFS issued the first BiOp, concluding that
21 the continued use of the organophosphate pesticides diazinon, malathion, and
22 chlorpyrifos jeopardize the existence of 27 species of salmon and steelhead and will
23

ORDER - 2

likely destroy or adversely modify the critical habitat for 25 of those species (hereinafter the "OP BiOp"). OP BiOp at 391. On April 20, 2009, NMFS issued the second BiOp concluding that EPA's registration of pesticide products containing carbaryl and carbofuran jeopardize 22 listed Pacific salmonids and will likely destroy or adversely modify the habitat of at least 20 listed Pacific salmonids (hereinafter the "Carbamate BiOp"). Carbamate BiOp at 481-82. NMFS also found that pesticide products containing methomyl jeopardize 18 listed Pacific salmonids and likely destroy or adversely modify the habitat of at least 16 Pacific salmonids. Id. at 482-84. The interim protective measures ordered in 2004, including the buffer restrictions, terminated with respect to the six pesticides at issue here when NMFS issued the OP and Carbamate BiOps. Washington Toxics II, No. 01-cv-132JCC, Order at 12 (indicating "the issuance by NMFS of a biological opinion" is a terminating event).

Plaintiffs filed this suit on November 29, 2010, under an ESA provision known as the ESA citizen suit provision alleging that EPA's failure to implement the recommendations in the OP and Carbamate BiOps in a timely manner is resulting in violations of Sections 7 and 9 of the ESA. The ESA citizen suit provision is frequently used to compel agency action. "It allows individuals to bring suit 'to enjoin any person, including the United States and any other governmental instrumentality or agency . . . who is alleged to be in violation of any provision of this chapter or regulation issued under authority thereof.'" Washington Toxics v. EPA, 413 F.3d 1024, 1030 (9th Cir. 2005). Plaintiffs allege that EPA is in violation of Section 7(a)(2) of the ESA, 16 U.S.C. § 1536(a)(2), and Section 9 of the ESA, 16 U.S.C. § 1538, because it has not taken any

ORDER - 3

steps to implement the Reasonable and Prudent Alternatives ("RPAs") and the Reasonable and Prudent Measures ("RPMs") articulated in the BiOps, or implemented any alternative protective measures.  Amended Complaint at ¶¶ 11, 17, 18, 20.  Plaintiffs seek to enjoin EPA's authorization of the use of diazinon, malathion, chlorpyrifos, carbaryl, carbofuran, and methomyl to the extent that it is inconsistent with the recommendations in the BiOps.  Amended Complaint at ¶ 11.  Dow AgroSciences LLC, CropLife America, and other groups representing pesticide manufacturers intervened on behalf of EPA (collectively "Intervenors").[1]

On October 10, 2012, Plaintiffs filed a motion for summary judgment and injunctive relief.  Docket no. 90.  In support of their motion, Plaintiffs submitted the Declaration of John D. Stark, docket no. 92, an exotoxicologist who specializes in the ecological assessment of pesticides and threatened and endangered species.  Declaration of John D. Stark, docket no. 92, at ¶ 1.  Plaintiffs also submitted the declaration of Joel Kawahara to support standing.  Declaration of Joel Kawahara, docket no. 95.  The parties then stipulated to allow Plaintiffs to withdraw their summary judgment motion without prejudice to refile in order for the Court to address the issue of whether extra-record evidence should be permitted in this action.  Id.; docket no. 97.

---

[1] Prior to the commencement of this case, Croplife America, Dow AgroSciences and other groups representing pesticide registrants filed suit against NMFS in the U.S. District Court for the District of Maryland alleging that the OP BiOp was flawed.  Dow AgroSciences LLC v. Nat'l Marine Fisheries Service, 638 F. Supp. 2d 508 (D. Md. 2009).  On October 31, 2011, the District of Maryland issued its opinion concluding that the OP BiOp was not flawed.  Dow AgroSciences LLC v. Nat'l Marine Fisheries Service, 821 F. Supp. 2d 792, 810-11 (D. Md. 2011), review accepted, no. 11-2337 (4th Cir. 2011).

ORDER - 4

The EPA has now filed a motion to limit judicial review to the administrative record. Docket no. 101. The EPA argues that "[c]ontrolling Ninth Circuit precedent makes clear that both [the Section 7 and the Section 9] claims for relief against EPA are to be reviewed in accordance with APA record review principles."[2] Id. at 3. Intervenors filed a response agreeing that the Section 7 claims should be limited to review of the administrative record, but arguing that the Section 9 claim should not be so limited and that "the Court should permit extra-record materials and corresponding discovery" with respect to the Section 9 claims only. Intervenors' Memorandum in Response to Federal Defendants' Motion to Limit Review, docket no. 105, at 2.

Plaintiffs oppose the motion to limit review to the administrative record. Docket no. 106. Plaintiffs argue that their claims arise under the ESA's citizen suit provision, not under the APA, and therefore the APA's provisions on the scope of review do not apply. Id. at 2. They argue further that their complaint alleges a failure to act, and as such there is no final agency action for the Court to review and no corresponding record of the agency's action. Id.

## II. Regulatory Framework

"The ESA reflects a conscious decision by Congress to give endangered species priority over the primary mission of federal agencies." W. Watersheds Project v. Kraayenbrink, 632 F.3d 472, 495 (9th Cir. 2011), cert. denied, __ U.S. __, 132 S.Ct. 366

---

[2] Federal Defendant and Intervenor Defendants do not ask the Court to rule on discovery with respect to the issues of standing or equitable remedies. Invervenors' Memorandum in Response to Federal Defendant's Motion to Limit Review to the Administrative Record at 2. n.2.

ORDER - 5

(2011).  Under the Endangered Species Act ("ESA") Section 7(a)(2),

> Each Federal agency shall, in consultation with and with the assistance of the Secretary,[3] insure that any action authorized, funded, or carried out by such agency . . . is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of habitat of such species . . . us[ing] the best scientific and commercial data available.

16 U.S.C. § 1536(a)(2); see also Grand Canyon Trust v. U.S. Bureau of Reclamation, 691 F.3d 1008, 1012 (9th Cir. 2012); Kraayenbrink, 632 F.3d at 495.  This includes both procedural and substantive duties.  Nat'l Ass'n of Home Builders v. Defenders of Wildlife, 551 U.S. 644, 667 (2007).  If the agency action "may affect" any listed species, the acting agency must formally consult with the federal agency responsible for protection of the species in question.  16 U.S.C. § 1536(a), (b); 50 C.F.R. § 402.14(a).  The "consulting agency" here is the NMFS.  See supra n.3; 50 C.F.R. § 402.02.

During consultation, the consulting agency "evaluates the effects of the proposed action on the survival of [the] species and any potential destruction or adverse modification of critical habitat" and, "based on 'the best scientific and commercial data available,'" formulates a BiOp.  Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv., 524 F.3d 917, 924 (9th Cir. 2008) (quoting 16 U.S.C. § 1536(a)(2)).  In the BiOp, the consulting agency states its position on whether the agency action will jeopardize or adversely modify or destroy the critical habitat of a listed species.  16 U.S.C. § 1536(b)(3)(A). If the consulting agency concludes that the agency action jeopardizes a

---

[3] Here, "Secretary" means the Secretary of Commerce because the Department of Commerce, through the National Marine Fisheries Service ("NMFS"), is responsible for protecting threatened and endangered anadromous fish, including salmon and steelhead.  16 U.S.C. §1532(15).

ORDER - 6

listed species, the BiOp must include reasonable and prudent alternatives ("RPAs") to the acting agency that mitigate the negative environmental effects of the agency action. Id.

Section 9 of the ESA, 16 U.S.C. § 1538, also prohibits the "taking"[4] of any threatened or endangered species in the course of agency action. If the consulting agency determines that the agency action may incidentally "take" a threatened or endangered species, the consulting agency must issue an incidental take statement ("ITS") specifying the impact of the incidental taking and reasonable and prudent measures ("RPMs") which, if followed, exempt the action agency from liability under the ESA. 16 U.S.C. § 1536(b)(4), (o)(2).

At issue in the present motion is the scope of review where a plaintiff challenges a federal agency's failure to act under the citizen suit provision of the ESA. The APA provides judicial review for "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. "In cases where Congress has simply provided for review, without setting forth the standards to be used or the procedures to be followed, this Court has held that consideration is to be confined to the administrative record and that no *de novo* proceeding may be held." U.S. v. Carlo Bianchi U.S. v. Carlo Bianchi & Co., 373 U.S. 709, 714-15 (1963). In a record review case under the APA, the scope of judicial review is limited to the administrative record. 5 U.S.C. § 706.

---

[4] "Take" is defined broadly to mean "harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct." 16 U.S.C. § 1532(19). The term "harm" includes any "significant habitat modification or degradation where it actually kills or injures wildlife by significantly impairing essential behavioral patterns, including breeding, feeding or sheltering." 50 C.F.R. § 17.3.

ORDER - 7

However, Plaintiffs contend that an action initiated under the citizen suit provision of the ESA is not limited to review under the APA because the ESA has created an independent cause of action.  Under 16 U.S.C. § 1540(g), a party may file suit "to enjoin any person, including the United States and any other governmental . . . agency . . . who is alleged to be in violation of any provision of this chapter or regulation issued under the authority thereof."  16 U.S.C. § 1540(g)(1)(A).  A party may file suit against a federal agency under the citizen suit provision concerning agency compliance with the ESA.  See Bennett v. Spear, 520 U.S. 154, 172-73 (1997); Environmental Protection Information Center v. The Simpson Timber Co., 255 F.3d 1073, 1078-79 (9th Cir. 2001).  Plaintiffs argue that "[b]ecause this substantive statute independently authorizes a private right of action, the APA does not govern the plaintiffs' claims."  Washington Toxics, 413 F.3d at 1034 (citing Pac. Rivers Council v. Thomas, 30 F.3d 1050, 1056 (9th Cir. 1994); Thomas v. Peterson, 753 F.2d 754, 763-64 (9th Cir. 1985)).

The EPA seeks an Order from this Court that review of Plaintiffs' claims is governed by the Administrative Procedure Act ("APA") and that review must be limited to the administrative record.[5]  Plaintiffs contend that their claims are brought under the ESA's citizen suit provision and, as such, review is not limited to the administrative record.[6]

---

[5] However, the EPA maintains that this is an "open record" case because there is no final agency action and therefore it may supplement the administrative record at any time "as appropriate."  See Motion to Limit Review to Administrative Record at 3 n.2.

[6] The Court notes that Plaintiffs do not contest the applicable standard of review.  Where a cause of action against a federal agency does not explicitly specify the standard of review, the APA's arbitrary and

ORDER - 8

### III. Discussion

Plaintiffs argue that their Section 7 and Section 9 claims have been brought under the citizen suit provision of the ESA to enjoin EPA's ongoing failure to protect threatened and endangered salmon and steelhead from the harmful effects of the six pesticides addressed in the OP BiOP and the Carbamate BiOp. Based on the Ninth Circuit's decisions in Kraayenbrick and Washington Toxics I, they argue that their claims are not subject to the APA's scope of review.

Plaintiffs argue that the APA is inapplicable because the APA only authorizes review where "there is no other adequate remedy in a court." 5 U.S.C. § 704; see also Bennett v. Spear, 520 U.S. 154, 161-62 (1997). Plaintiffs contend their claims are brought pursuant to ESA's citizen suit provision, which explicitly creates a remedy at law, and "the APA does not govern the plaintiff's claims" and the record review limitation of the APA does not apply. Washington Toxics I, 413 F.3d at 1034; Kraayenbrink, 632 F.3d at 481, 497. Plaintiffs further argue that EPA's arguments are without merit because in a failure to act case, such as this one, there is no final agency action and therefore no closed administrative record for the Court to review.

EPA disagrees and argues that Plaintiffs' reliance on Washington Toxics and Kraayenbrink is misplaced because Karuk Tribe v. U.S. Forest Service, 618 F.3d 1006

---

capricious standard applies. "'Because the ESA contains no internal standard of review, section 706 of the Administrative Procedure Act governs review' of the [agency's] actions and 'the normal arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law standard applies.'" Kraayenbrink, 632 F.3d at 496 (quoting Village of False Pass v. Clark, 733 F.2d 605, 609-10 (9th Cir. 1984)).

ORDER - 9

(9th Cir. 2011), an *en banc* decision of the Ninth Circuit decided after Kraayenbrink, silently overrules Washington Toxics and Kraayenbrink to the extent those cases support Plaintiffs' position. Reply, docket no. 107, at 3-4. The Court disagrees. In both Washington Toxics and Kraayenbrink the issue before the Ninth Circuit was whether a federal agency's failure to consult resulted in a violation of the ESA. In Washington Toxics, plaintiffs sued the EPA under the ESA's citizen suit provision, arguing that EPA's failure to consult with NMFS over the effects of its ongoing pesticide registrations violated Section 7(a)(2). The court reviewed an extensive factual record prior to ordering injunctive relief. On appeal, Intervenor Defendants argued that the district court erred by not limiting review to the administrative record. Washington Toxics, 413 F.3d at 1034 (arguing that the district court should have applied "the APA and its limited provision for judicial review of final agency action"). The Ninth Circuit disagreed, concluding that the "district court correctly held . . . that the ESA citizen suit provision creates an express, adequate remedy." Id. It concluded that because the citizen suit provision "independently authorizes a private right of action, the APA does not govern the plaintiffs' claims." Id.

In Kraayenbrink, the Ninth Circuit affirmed its holding in Washington Toxics. There, plaintiffs brought claims under the ESA citizen suit provision alleging that the Bureau of Land Management failed to consult with the Fish and Wildlife Service before approving revisions to nationwide grazing regulations. The district court held that plaintiffs could submit extra-record evidence to support their claims because the APA's scope of review does not apply to actions under ESA's citizen suit provision.

Kraayenbrink, 632 F.3d at 497.  Intervenor defendants challenged the Court's decision on appeal and the Ninth Circuit upheld the district court's conclusion.  "The APA applies only where there is 'no other adequate remedy in a court,' 5 U.S.C. § 704, and—because the ESA provides a citizen suit remedy—the APA does not apply in such actions."  Id. (citing Washington Toxics, 413 F.3d at 1034).

Karuk Tribe does not overrule Washington Toxics and Kraayenbrink.  There, the issue before the Court was whether the Forest Service's approval of four notice of intent to conduct mining activities in the Klamath National Forest constituted "agency action" that "may affect" listed species and trigger consultation.  The Court noted the following under the heading "Standard of Review:"

> Because this is a record review case, we may direct that summary judgment be granted to either party based upon our review of the administrative record.
>
> An agency's compliance with the ESA is reviewed under the Administrative Procedure Act ("APA").  Under the APA, a court may set aside an agency action if the court determines that the action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

Id. at 1017 (citations omitted).  The opinion includes no further discussion of the standard and no discussion of or citation to Washington Toxics or Kraayenbrink.  Karuk Tribe cannot reasonably be read to implicitly or silently overrule the Ninth Circuit's reasoned holdings that, in circumstances where a plaintiff challenges a federal agency's failure to

ORDER - 11

act under the citizen suit provision of the ESA, review is not confined to an administrative record.[7]

The EPA makes several other arguments in an attempt to demonstrate that Washington Toxics and Kraayenbrink are inapplicable here.  First they contend that Plaintiffs' challenge is not properly characterized as a "failure to act" claim, but rather a challenge to the Agency's affirmative conclusions that are addressed and supported in the administrative record.  Reply at 1 n.1.  This argument is disingenuous.  The plaintiffs have clearly articulated that they are alleging that EPA's failure to implement the RPAs and RPMs contained in the OP and Carbamate BiOps, or otherwise implement protective measures, is resulting in jeopardy and take.  EPA cannot, by semantics alone, turn their inaction into action.

Second, the EPA contends that Kraayenbrink did not overrule a long-standing line of cases which establish that the APA scope and standard of review apply to ESA claims. Instead, they contend that Kraayenbrink merely stands for the proposition that, under the facts of that case, supplementation of the administrative record was appropriate.  Motion to Limit Review at 9.  This argument does not withstand scrutiny.  In Kraayenbrink, neither the district court, nor the Ninth Circuit considered whether it should or could supplement the administrative record under the APA.  Instead, the district court reviewed

---

[7] EPA's reliance on Grand Canyon Trust v. U.S. Bureau of Reclamation, 691 F.3d 1008 (2012), is equally misplaced.  There, the Ninth Circuit did not, as EPA claims, conclude that a failure to consult claim is reviewed under the APA.  Rather, the Court concluded that the district court did not have jurisdiction under either the citizen suit provision of the ESA or the APA to review the draft 2009 Recovery Goals at issue.

ORDER - 12

the administrative record because plaintiffs also raised two APA claims in addition to the ESA claims discussed by the Ninth Circuit. W. Watersheds Project v. Kraayenbrink, 538 F. Supp. 2d 1302, 1311-12 (D. Idaho 2008). The district court concluded that it could rule against the defendants on the ESA claims based only on the administrative record, but declined to do so and went on to consider extra-record evidence with respect to those claims. Id. at 1322-24. EPA's argument does not address these facts. The holding in Kraayenbrink is that the "APA applies only where there is 'no other adequate remedy in a court.'" Kraayenbrink, 632 F.3d at 497. Because the ESA citizen suit provision creates an adequate remedy for claims brought under that provision, the APA does not apply in such actions and the court "may consider evidence outside the administrative record." Id.[8]

The conclusion that supplementation of the administrative record is appropriate under certain circumstances is also supported by several unpublished decisions from the Western District of Washington. For example, in Wild Fish Conservancy v. National Park Service, the National Park Service moved for a protective order limiting the scope of review to the administrative record in a case involving claims brought under the ESA. Relying on Washington Toxics and Kraayenbrink the Court determined that

---

[8] Accord Oregon Natural Desent Association v. Kimbell, 593 F.Supp.2d 1217 (D. Or. 2009) (permitting plaintiff to introduce evidence, including expert reports, to prove alleged violations of Sections 7 and 9); Wildearth Guardians v. FEMA, 2011 WL 905656, at *3 (D. Ariz. 2011) (explaining that, under Kraayenbrink, "the scope of review for ESA citizen-suit claims is not provided for by the APA and as a result parties may submit and the court may consider evidence outside the administrative record."); Conservation Congress v. Finley, 2012 WL 2989133, at *6 (N.D. Cal. 2012) (reviewing extra-record declarations for the purpose of adjudicating the merits of Plaintiffs' ESA claims); Wild Fish Conservancy v. National Park Service, 2012 WL 5384896, at *1 (W.D. Wash. 2012) (denying agency's motion to limit the scope of review to the administrative record).

supplementation of the administrative record was appropriate under the circumstances. "Even if confusion exists regarding discovery in ESA citizen suit cases, the Court finds that a completely developed record is the best solution, at trial and on appeal, for the just, speedy, and inexpensive determination of Plaintiffs' claims." Wild Fish Conservancy, 2012 WL 5384896, at *1 (W.D. Wash. 2012). Similarly, in Sierra Club v. McLerran, 2012 WL 5449681 (W.D. Wash. 2012), the Court addressed whether review of a Clean Water Act citizen suit claim should be limited to the administrative record. The Court noted that "the Ninth Circuit has recognized that district courts wield great discretion in setting the scope of administrative review in citizen suit cases." Id. at *2. The Court went on to deny the plaintiff's request for a holding that de novo judicial review was required, but granted plaintiff's request to supplement the administrative record. Id. at *4. In so holding, the Court concluded that

> allowing extra-record evidence in a failure-to-act claim is within the discretion of this Court. Whether or not to allow supplementation and to what extent it should be allowed must be considered on a case by case basis.

Id. at *3. Here, the Court concludes that extra-record evidence is permissible and appropriate under the circumstances of this case.

Having concluded that the parties may supplement the administrative record, the Court must determine the limits of such supplementation. All parties have requested that, whatever the Court's decision on this issue, the Court maintain parity between the parties. The Court agrees that all parties should have an equal opportunity to present extra-record evidence in support of their position. However, a party may only "supplement the record

ORDER - 14

with evidence that is relevant to the question of whether relief should be granted."
Wildearth Guardians v. F.E.M.A., No. 10-cv-863 (D. Ariz., March 15, 2011), 2011 WL 905656 at *3 (citation omitted).

### IV. Conclusion

The Federal Defendant's Motion to Limit the Record, docket no. 101, is DENIED. The parties may supplement the administrative record with relevant material.[9] The Court DIRECTS each party to provide the other parties with a list of documents with which it wishes to supplement the record and copies of those documents no later than fifteen days after entry of this Order. After the lists and documents have been exchanged, the parties are to meet and confer and attempt to resolve any disputes that arise, bearing in mind that relevance is the applicable standard when it comes to admissibility. No later than thirty days after the date of this Order, the parties are directed to file a joint status report ("JSR") with the Court listing all documents they have agreed should be added to the record and any on which they have been unable to reach agreement. The parties shall also include in their JSR proposed deadlines for summary judgment briefing.

IT IS SO ORDERED.

///

///

///

///

---

[9] The Intervenor Defendants request for discovery is DENIED without prejudice to be considered at a later date.

ORDER - 15

The Clerk is directed to send a copy of this Order to all counsel of record.

Dated this 28th day of January, 2013.

                         /s/ Thomas S. Zilly
                         THOMAS S. ZILLY
                         United States District Judge

ORDER - 16