UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NORTHWEST COALITION FOR ALTERNATIVES TO PESTICIDES, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al., <br><br> Defendants, <br><br> v. <br><br> CROPLIFE AMERICA, et al., <br><br> Intervenor-Defendants. | C10-1919 TSZ <br><br> ORDER |

THIS MATTER comes before the Court on Intervenor-Defendants' motion to dismiss first and third claims, docket no. 147. Having considered the motion and all pleadings filed in support of and opposition thereto, the Court enters the following Order.

///

///

ORDER - 1

**Background**

Plaintiffs filed a Supplemental Complaint on September 17, 2013. Supplemental Complaint, docket no. 137. Plaintiffs generally allege that the Environmental Protection Agency ("EPA") has failed to comply with its obligations under the Endangered Species Act ("ESA") to protect salmon and steelhead (collectively, "salmonids") from certain pesticide use. The pending motion is brought by Intervenor-Defendants ("Intervenors") to dismiss Plaintiffs' first and third claims. Intervenor's Motion, docket no. 147.

Plaintiffs' first claim alleges that EPA is violating ESA Section 7 by failing to complete consultation with the National Marine Fisheries Service ("NMFS") for its ongoing authorization of uses of three organophosphate ("OP") pesticides. Supplemental Complaint at ¶¶ 76-82. As a result of prior litigation, EPA initiated consultation with NMFS regarding these and other pesticides between August 2002 and December 2004. Id. at ¶ 3. NMFS issued a biological opinion ("BiOp") on the OP pesticides ("OP BiOp") on November 18, 2008, concluding that use of the OP pesticides would jeopardize the continued existence of 27 species and destroy or adversely modify the critical habitat of 25 of those species. Id. at ¶ 6. The OP BiOp required the implementation of certain measures to ensure protection of the affected species. Id. On February 21, 2013, the Fourth Circuit vacated the OP BiOp and remanded it to NMFS for additional explanation. Id. at ¶ 12 (citing Dow AgroSciences LLC v. Nat'l Marine Fisheries Serv., 707 F.3d 462 (4th Cir. 2013)).

Plaintiffs' third claim alleges that EPA is unlawfully taking listed salmonids in violation of ESA Section 9. Id. at ¶¶ 89-97. Plaintiffs' third claim takes issue with

ORDER - 2

EPA's authorization of both the OP pesticides as well as three "carbamate" pesticides. NMFS issued a BiOp with respect to the carbamate pesticides on April 20, 2009, ("Carbamate BiOp"), concluding that the use of the carbamate pesticides would jeopardize 22 species and likely destroy or adversely modify the habitat of at least 20 species. Id. at ¶ 7. The Carbamate BiOp articulated a comprehensive Reasonable and Prudent Alternative ("RPA") with specific protections to avoid harm to the affected species and required implementation of the RPA within one year. Id. The Carbamate BiOp included an Incidental Take Statement ("ITS") authorizing some "take" of listed salmonids from EPA's authorization of the carbamate pesticides, so long as EPA complied with the RPA and Reasonable and Prudent Measures ("RPMs") articulated in the BiOp. Id. at ¶ 9.

**Discussion**

### A. Standard of Review

In order to survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must allege "enough facts to state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). In reviewing the adequacy of the complaint, the Court must accept all well-pleaded allegations as true, South Ferry LP, No. 2 v. Killinger, 542 F.3d 776, 782 (9th Cir. 2008), and draw all reasonable inferences in favor of the plaintiff. Twombly, 550 U.S. at 555. Similarly, in considering a Rule 12(b)(1) motion to dismiss for lack of jurisdiction, the Court takes the allegations in the plaintiff's complaint as true. Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004).

## B. Plaintiffs' First Claim: Failure to Complete Consultation with NMFS in Violation of ESA Section 7

Intervenors argue that Plaintiffs have failed to identify any affirmative agency action triggering a duty to consult with NMFS. In the alternative, Intervenors claim that any duty to consult has been met by EPA's prior initiation of consultation.

### 1. Agency Action Requiring Consultation

Section 7 of the ESA requires any federal agency to "insure that any action authorized, funded, or carried out by such agency (hereinafter . . . referred to as an "agency action") is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of habitat of such species." 16 U.S.C. § 1536(a)(2). Section 7 imposes on an agency a duty to consult with the expert wildlife agencies "before engaging in any discretionary action that may affect a listed species or critical habitat." Karuk Tribe of Cal. v. United States Forest Serv., 681 F.3d 1006, 1020 (9th Cir. 2012). "The purpose of consultation is to obtain the expert opinion of wildlife agencies to determine whether the action is likely to jeopardize a listed species or adversely modify its critical habitat and, if so, to identify reasonable and prudent alternatives that will avoid the action's unfavorable impacts." Id. An "agency action" is defined broadly under the ESA, but is limited to "actions in which there is discretionary Federal involvement or control." Id. (citation omitted). "An agency must consult under Section 7 only when it makes an "affirmative" act or authorization." Id.

ORDER - 4

Intervenors argue that Plaintiffs have failed to identify any affirmative act by EPA triggering a duty to consult. Defendant EPA filed a response concurring with this argument. Defendant's Response, docket no. 149. Plaintiffs argue that the EPA's authorization is an ongoing agency action and that the Ninth Circuit's decision in <u>Karuk Tribe</u> did not overrule prior case law holding ongoing action sufficient to trigger consultation.

In <u>Karuk Tribe</u>, the Ninth Circuit discussed the relevant law regarding agency action. Intervenors argue that <u>Karuk Tribe</u> implicitly overruled prior case law holding ongoing agency control constitutes "agency action," and that under <u>Karuk Tribe</u>, there is no duty to consult unless the agency takes a new affirmative action. One district court judge has considered this precise issue and agreed with the position of Intervenors here. In <u>Center for Biological Diversity v. EPA</u>, 2013 U.S. Dist. LEXIS 169015 (N.D. Cal. Nov. 25, 2013) ("<u>CBD</u>"), Judge Spero held that "to the extent prior cases held that ongoing control over a previous agency action is sufficient to trigger Section 7's consultation requirement without any further affirmative act, those holdings have been implicitly overruled in <u>Karuk Tribe</u>." Judge Spero held that EPA's failure to initiate consultation with respect to pesticides is not an affirmative act constituting agency action. <u>Id.</u>

However, the issue of ongoing agency action was not squarely before the <u>Karuk Tribe</u> court. Furthermore, the court cited with approval the line of cases which developed

the ongoing action analysis.[1] One district court considering Karuk Tribe disagreed with the conclusion in CBD that Karuk Tribe implicitly overruled Pacific Rivers, one such ongoing action case. See Salix v. United States Forest Serv., 944 F. Supp. 2d 984, 998 (D. Mont. 2013). Finally, this Court held that "Karuk Tribe cannot reasonably be read to implicitly or silently overrule the Ninth Circuit's reasoned holdings that, in circumstances where a plaintiff challenges a federal agency's failure to act under the citizen suit provision of the ESA, review is not confined to an administrative record." Northwest Coalition v. United States EPA, 920 F. Supp. 2d 1168, 1174 (W.D. Wash. 2013). Similarly, the Court declines to read Karuk Tribe as silently or implicitly overruling prior Ninth Circuit precedent holding that ongoing agency action is sufficient to trigger the ESA consultation requirement.

### 2. Prior Consultation

Intervenors argue in the alternative that even if Plaintiffs identified agency action triggering EPA's duty to consult, EPA has already met that duty by initiating consultation with NMFS. This argument is ultimately not persuasive. On its face, this argument has merit because EPA previously initiated consultation, and it is not due to any fault of EPA that the OP BiOp was vacated. However, if EPA had not initiated consultation, the Court would have authority to order injunctive relief until consultation is complete, as was ordered in the prior litigation between these parties. Furthermore, the ESA requires an

---

[1] See Karuk Tribe, 681 F.3d at 1021 (citing Wash. Toxics Coal. v. Envtl. Prot. Agency, 413 F.3d 1024, 1031-33 (9th Cir. 2005), Turtle Island Restoration Network v. Nat'l Marine Fisheries Serv., 340 F.3d 969, 974 (9th Cir. 2003), and Pac. Rivers Council v. Thomas, 30 F.3d 1050, 1054-55 (9th Cir. 1994)).

agency to ensure its actions do not jeopardize an endangered species. Depriving Plaintiffs of any recourse to enjoin such agency actions would not comport with the requirements of the ESA. The Court holds that Plaintiffs' first claim contains sufficient facts to state a claim for relief that is plausible on its face and Intervenors' motion to dismiss the first claim is DENIED.[2]

### C. Plaintiffs' Third Claim: Unlawful Taking of Salmonid in Violation of ESA Section 9

Intervenors argue that the Court lacks subject matter jurisdiction over Plaintiffs' third claim because Plaintiffs have failed to meet the jurisdictional requirements of the Federal Insecticide, Fungicide and Rodenticide Act ("FIFRA") Section 16(b). FIFRA contains a provision allowing for judicial review of an agency order issued following a public hearing, within 60 days after entry of the order, by filing a petition with the court of appeals. 7 U.S.C. § 136n(b). Intervenors argue that this is the sole avenue for review of EPA's pesticide registration decisions.

The cases cited by Intervenors involved "failure to consult" claims, which challenge the validity of an agency action and are distinguishable from a takings claim. See, e.g., American Bird Conservancy v. FCC, 545 F.3d 1190, 1193 (9th Cir. 2008). For example, in American Bird, the plaintiff attempted to frame its challenge as solely an objection to the FCC's failure to consult before issuing registrations, not as a challenge to the registrations. Id. The court disagreed, finding that because plaintiff objected to

---

[2] Alternatively, Intervenors' agency action argument is barred by *res judicata* because Intervenors previously argued and lost this argument in the case of Washington Toxics Coalition, et al. v. Environmental Protection Agency, et al., No. C01-0132-C (W.D. Wash.).

specific registrations which it alleged were not supported by appropriate consultation, the core objection was to the registrations themselves.  Id.

In contrast with a failure to consult case, a takings claim does not challenge the administrative validity of any agency order.  Rather, a takings claim focuses on the actual harm done to the affected species and is therefore not governed by FIFRA's judicial review provision.  Intervenors argue that, despite Plaintiffs' artful pleading, the substance of the claim is a challenge to EPA's administrative action because EPA itself is not applying pesticides in ways that affect salmon.  However, Plaintiffs have alleged that "EPA's take of listed salmonids violates section 9 of the ESA."[3]  Supplemental Complaint at ¶ 97.  Therefore Plaintiffs have pleaded a takings claim and jurisdiction in this Court is proper.  The motion to dismiss is DENIED.

**D. Plaintiffs' Surreply and Motion to Strike**

Plaintiffs move to strike portions of Intervenors' reply brief which raise new arguments based on EPA's response brief.  The Court GRANTS the motion and STRIKES the following: (1) Page 1, lines 6-8; (2) Page 3, lines 13-20; and (3) Page 5, lines 6-9 and 23-26.  The first two sections mischaracterize EPA's response, while the third is a new argument improperly raised for the first time in Intervenors' reply.

---

[3] Whether or not the actions allegedly taken by EPA are sufficient to constitute a takings claim is not before the Court at this time and will likely be resolved later in the proceedings.

## Conclusion

For the foregoing reasons, Intervenors' motion to dismiss, docket no. 147, is DENIED. The Court GRANTS Plaintiffs' motion to strike, docket no. 157.

IT IS SO ORDERED.

Dated this 28th day of January, 2014.

*[signature: Thomas S. Zilly]*

THOMAS S. ZILLY
United States District Judge